CLYDE L. HAWKINS, Appellant, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY OF BOSTON, Appellee.

MARCH 13, 1928.

*Guy A. Miller*, for appellant.

*Henry & Henry*, for appellee.

MORLING, J.—Plaintiff's allegation is:

"That, on or about the first day of March, 1922, the plaintiff, Clyde L. Hawkins, became wholly and permanently disabled, and remained wholly and permanently disabled until November 1, 1925."

It is a sufficient statement of the question, for the present, to say that it is whether such a disability—one that has terminated—is "permanent," within the meaning of the policy sued on. The policy is one of life insurance, calling for $2,000. It contains the following:

"Total and Permanent Disability Benefit Provision.

"1. If after one full year's premium shall have been paid upon this policy, the insured shall become wholly and permanently disabled by bodily injury or disease sustained or contracted after the date hereof, so that thereby he will be wholly, continuously and permanently prevented from the pursuit of any form of mental or manual labor for compensation, gain or profit whatsoever, and has been so disabled for not less than sixty days, if there is no premium in default, upon receipt of due proof of such disability, the company will grant the following benefits subject to the terms and conditions herein set forth.

"2. Disability Occurring Before Age 60.—If such disability occurs before the insured reaches the age of 60 years, the company will waive the payment of further premiums, after the then current policy year, during the continuance of the disability, and, at the end of six months from the date on which the disability is proved, will pay to the insured, subject to the conditions and limitations of this provision, with the written consent of the assignee, if any, an amount equal to one-tenth of the face amount of the policy, and a like amount annually thereafter during the continuance of the disability until the maturity of the policy.

"3. The disability payments made and the premiums waived under the conditions of Section 2 will not reduce the amount payable under the policy at maturity or affect the manner of payment or the non-forfeiture values or the distribution of surplus as provided in the policy.

"Interest on any indebtedness under the policy will be deducted from the amounts paid during disability and the principal of such indebtedness will be deducted from the sum payable at maturity. In case there are outstanding accumulations or additions to the policy from surplus distributions, they will be payable with the final settlement. * * *

"4. Disability Occurring After Age 60.—If such disability occurs after the insured reaches the age of 60 years, the policy will be maintained in force, subject to the conditions and limitations hereinafter set forth, without payment of further premiums during the continuance of the disability, for a decreasing sum which will be the face amount of the policy, less the premiums waived and less any indebtedness to the company on the policy. The amount of the premiums waived yearly will

decrease in proportion to the decreasing sum insured, and the cash surrender and loan values will be those shown by the table of non-forfeiture values in the policy, reduced proportionately to the reduced insurance, less any indebtedness.

"5. ·Proof of Continued Disability.—The company shall have the right to require at any time, but not oftener than once a year, due proof of the continuance of the disability. If the insured shall fail to furnish such proof when required to do so, or shall so far recover as to be able to perform work of any kind for compensation, gain or profit, the disability benefits shall be discontinued.

"6. Disability Premium.—The disability benefits as set forth in this provision are granted in consideration of the statements and representations in the application for this policy and of a special yearly premium of $3.84 payable in addition to and as a part of the regular premium called for by the policy during its premium paying period or until the insured reaches the age of 60 years. The disability premium may be discontinued at any policy anniversary upon request of the insured, and presentation to the company of the policy for cancellation of the disability benefit provision.

"7. Recognized Disabilities.—Without prejudice to any other cause of disability, the following will be recognized as disability within the meaning of this provision, namely, the total and irrecoverable loss of the use of both eyes or of both hands or of both feet, by removal or disease, or such loss of the use of one hand or one foot.''

Plaintiff argues, in substance, that it is not possible, and a proper construction of the policy does not require, that he prove that he will be unable to pursue any kind of occupation for gain·or· profit for the rest of his life; that the policy must be so construed as to give effect, if possible, to all of its provisions; that, though he may recover from a total disability, still, when the disability clause is construed as an entirety, and in view of the rule that the language adopted is that of the company, and must be construed most strongly against it, the purpose of the policy was to grant disability benefits during the period of total disability, notwithstanding that such disability might not continue during the lifetime of the insured.

The language used must be given'its usual and ordinary

meaning, unless the instrument, taken as a whole, shows that a different or special meaning was intended, or is required in order to obviate an unreasonable or absurd result.

The word "permanent," or its derivative "permanently," has different meanings, dependent upon the subject-matter and connection of its use. Webster defines it:

"Continuing in the same state, or without any change that destroys form or character; remaining unaltered or unremoved; abiding; durable; fixed; stable; lasting."

The synonyms given are "durable, constant." The Century defines the word as "lasting or intended to last indefinitely; fixed or enduring in character, condition, state, position, occupation, use, or the like; remaining or intended to remain unchanged or unremoved; not temporary or subject to change; abiding." "Permanently" is defined: "in a permanent or lasting manner; so as to remain." Antonyms are "transient, temporary, shifting, provisional." It is obvious that a disability which is temporary or transient cannot be permanent. Whether an injury is permanent or temporary must, in many cases, be a matter of opinion. The evidence from which an opinion would be formed might vary. It might seem, during the early stages of the disability, that recovery is impossible, and the injury must be permanent; whereas time might develop such changes as to demonstrate that the earlier opinion was erroneous. Total or partial recovery from a seemingly permanent injury does occur. In order to claim the benefit, proof must be presented. The proofs that may be presented during the first six months may be entirely different from the proofs that may be presented after a year or two. Notwithstanding this possibility, it would be unjust to withhold the benefit merely because future developments may show that an injury seemingly permanent is in fact temporary. It is one thing to withhold benefits as long as life lasts, in order to avoid the possibility of any mistake and pay nothing until it is finally and conclusively determined that the injury is permanent, which, in many cases, can only be at death, and an entirely different thing to accept provisionally apparent proofs of permanency, and make payment accordingly,—that is, give the insured the benefit of his seeming condition while it lasts, with the right of the company to discontinue, should the condition turn out to be temporary. Fair-

ness to the policyholder requires that reasonable evidence of permanency be accepted, and the benefit paid, so long as such apparent permanency exists; but that, if it later appears that the seemingly permanent condition is not such, then the company shall be no longer held to continue paying benefits. One of the purposes of the provision is to secure the insurance without further premium, to one who becomes permanently disabled. The relation of the stipulated amount of the disability premium, $3.84, to the policy premium of $53.44 and to the benefit, 10 per cent of face of policy annually and total relinquishment of annual premiums, and the option to discontinue the benefit provision, bear out the interpretation that the ordinary and common risk of temporary disability which happens to most people was not in mind.

"Permanent" cannot be given the meaning of its antonym; "temporary." Unless it means "permanent," it has no practical significance.

In the light of these considerations, we are of the opinion that the plaintiff must fail. The proofs offered by him to the company in support of his claim show that, at the time they were made, the insured was not wholly disabled; that he was slowly improving. To the question, "Are you totally disabled at the present time, so that you will be permanently prevented from the pursuit of any form of mental or manual labor for compensation, gain, or profit whatsoever?" plaintiff answered, "No, not since November 1, 1925."

Paragraph 1 of the disability benefit provision, it will be noticed, contains the condition that the insured shall have been "wholly, continuously and permanently prevented from the pursuit of labor for compensation" for not less than 60 days. It is argued that this language shows that the word "permanent" could not be intended to mean total disability for life. We are of the opinion, however, that this clause goes to the proof of the disability, and by the 60-day moratorium, if it may be so called, it is intended to take that amount of time to ascertain whether the disability is permanent or not.

By Clause 2 it is provided that, if the disability occurs before the insured reaches the age of 60, the company will waive payment of further premiums after the then current policy year, "during the continuance of the disability, and, at the end

of six months from the date on which the disability is proved, will pay * * * during the continuance of the disability until the maturity of the policy." It is argued that use of the words "the continuance of the disability" shows a purpose to pay benefits though the disability may not be lifelong. We think, however, that the foregoing comments explain also the use of these words, —that a seemingly permanent disability may turn out not to be such.

Plaintiff places great reliance on Paragraph 5: that the company shall have the right to require proof of continuance of the disability, and, if insured fails to furnish it, or if he shall so far recover as to be able to perform remunerative work of any kind, the disability benefits will be discontinued. The company, though reasonably satisfied that the disability is permanent, and willing to pay the benefits, may still have doubts. In view of such possibilities, it retains the right to discontinue if it shall later appear that the disability is temporary.

Paragraph 7, we think, shows that the word "permanently" is used in its ordinary sense. One who irrecoverably loses the use of both eyes, both hands, or both feet, or one hand or one foot, is permanently disabled. No proof of permanency in such case beyond the character of the injury or loss ought ordinarily to be, and by the policy is not, required. The court of appeals of New York arrived at this conclusion in *Ginell v. Prudential Ins. Co.*, 237 N. Y. 554 (143 N. E. 740), adopting the dissenting opinion in 205 App. Div. 494 (200 N. Y. Supp. 261). Likewise, the Supreme Court of Mississippi, in *Shipp v. Metropolitan Life Ins. Co.*, 146 Miss. 18 (111 So. 453). *Leduc v. Metropolitan Life Ins. Co.*, 65 Quebec Official L. R. (1927) 320, is to the same effect. Consistency with our holding in *Corsaut v. Equitable Life Assur. Soc.*, 203 Iowa 741, we think requires this interpretation. The Supreme Court of Nebraska in *Eastep v. Northwestern Nat. Life Ins. Co.*, 114 Neb. 505 (208 N. W. 632), arrived at a different conclusion. That court seems not to have taken into account the considerations we have referred to. We think the reasoning there proceeds from insufficient premises. See *Carson v. New York Life Ins. Co.*, 162 Minn. 458 (203 N. W. 209).—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.