## LEWIS v. METROPOLITAN LIFE INS. CO., Inc.
### No. 4313.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

Jackson & Smith, of Shreveport, for appellant.

R. J. Newsom, of Shreveport, for appellee.

TALIAFERRO, J.

Plaintiff is the holder of a twenty-year payment plan life insurance policy issued by the defendant company to which is attached, as part thereof, a supplementary contract providing for the waiver of premiums and payment of a monthly income to the insured, under certain conditions. To secure the benefits stipulated in the supplementary contract, plaintiff paid 57 cents per annum. The pertinent portions of this contract, those having direct bearing upon the issues in this case, we quote:

"Metropolitan Life Insurance Company * * * hereby agrees that upon receipt * * * of due proof * * * that the insured has * * * become totally and permanently disabled, as the result of bodily injury or disease * * * so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability,

"1. Waive the payment of each premium falling due under said Policy and this Supplementary contract, and,

"2. Pay to the insured * * * a monthly income of $10.00 for each $1000 of insurance * * * under said policy."

"Notwithstanding that proof of disability may have been accepted by the Company as satisfactory, the insured shall at any time, on demand from the Company, furnish due proof of the continuance of such disability, but after such disability shall have continued for two full years the Company will not demand such proof more often than once in each subsequent year. If the insured shall fail to furnish such proof, or if the insured shall be able to perform any work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease, and all premiums thereafter falling due shall be payable according to the terms of said Policy and of this Supplementary Contract."

The allegations of plaintiff's petition describing the nature of the disability with which he had been afflicted are contained in article 2 of his petition, viz.:

"Petitioner avers and shows that on or about the 5th day of April, 1927, he suffered a nervous breakdown and became totally disabled with an illness of a sufficiently permanent character to come under the terms of this annexed insurance policy No. 4588442 C."

And in article 3 he says: "He was not able to engage in any gainful occupation until on or about January 5th, 1929," and in article 7 it is alleged:

"That the defendant * * * had due notice of this nervous breakdown and illness on forms supplied by the home office of the said insurance company and filled out by their agent and signed by a competent physician."

Plaintiff sues for $10 per month for the twenty-one months of his disability, or $210, and for $56.49 premiums paid by him while disabled, for penalties and attorney's fees, aggregating $682.98.

Before pleading to the merits, defendant filed an exception of no cause of action predicated upon the contention that the supplementary contract sued on insured plaintiff against *permanent* disability and not *temporary* disability, as disclosed by the facts set out in the petition. This exception was overruled. Defendant then answered. The issuance of the insurance policy and supplementary agreement is admitted, but the right of plaintiff to recover any amount under the same on account of the disability of which

he complains is denied, because such disability was only temporary and not permanent. It denied that plaintiff has ever submitted proof of total and permanent disability, as required by the contract, but on the contrary avers the proof submitted disclosed his disability to have been temporary only.

The case was tried on its merits and judgment awarded plaintiff for $210. In other respects his demands were rejected. Defendant has appealed.

■ We think the exception of no cause of action should have been sustained. There is no allegation in plaintiff's petition that his disability was of a permanent nature, nor that proof that he had "become totally and permanently disabled" had been given to defendant, as expressly required by the terms of the contract, above quoted, but, on the contrary, the allegations touching this phase of his complaint negative the argument made by him to the effect that the disability was of a permanent character. It is true it is alleged that he "became totally disabled with an illness of sufficient permanent character to come under the terms" of the policy, but this allegation is not one of fact but a legal deduction or conclusion of the pleader.

However, as the lower court heard evidence and decided the case on its merits, and the entire record is before us, we shall likewise consider and pass on it.

■ A decision of this case turns upon the meaning of the word "permanent" as employed in the supplementary agreement attached to the policy of insurance. If that word, as thus used, is to be given its usual, ordinary and natural meaning, then it is obvious plaintiff's claim for disability does not come within the contract.

"The words of a contract are to be understood, like those of a law, in the common and usual signification, without attending so much to grammatical rules, as to general and popular use." C. C. Art. 1946.

"Courts are bound to give legal effect to all such contracts according to the true intent of all the parties. * * *

"The intent is to be determined by the words of the contract, when these are clear and explicit, and lead to no absurd consequence." C. C. Art. 1945.

From the foregoing codal provisions, taken from the section treating of the interpretation of agreements, it is plain that in construing the words of a contract the usual and ordinary significance of such words should be adopted, when the contract itself does not clearly place a different meaning on them, and the intent of the parties thereby ascertained, when such a construction will not lead to absurd consequences.

The word "permanent" to the lay mind has a well-defined meaning. It is the antonym of "temporary," and to give it the meaning contended for by plaintiff would be equivalent to deleting it entirely from the contract and substituting in its place the word "temporary" which, no doubt designedly, was omitted therefrom. It would be an absurd construction of this contract to say that plaintiff was "totally and permanently" disabled for twenty-one months. It would be reasonable to say that he was "totally disabled" for twenty-one months or that he suffered "temporary total disability"; but it is a contradiction to say that the disability was total and permanent for twenty-one months. If plaintiff's contention be adopted, then for the small premium of 57 cents per annum defendant can be held responsible to him for monthly payments of $10 each time he becomes totally disabled and that disability continues for ninety days or more. Such evidently was not the intention of this supplementary agreement. The number of insured who become totally and permanently disabled are relatively few, hence the small premium under the contract.

A condition precedent to the devolution of the benefits provided for in the agreement is that "such disability (referring to the total and permanent sort previously mentioned) has already continued uninterruptedly for a period of at least three months." The wisdom of this stipulation is obvious.

On this phase of the defense learned counsel for defendant, in brief, make a very logical and forceful argument which we quote as reflecting a correct interpretation of the contract on the point, viz.:

"The contract provides that the insured will be entitled to certain benefits upon receipt of proof that he has become totally and *permanently* disabled. However, the benefits are not granted at once, according to the terms of the contract, but only after the total and *permanent* disability shall have existed for three months. The contract says that such payments will be made after "such disability has continued uninterruptedly for three months." The words "such disability" mean, of course, the disability defined in the preceding clause, which is a total and permanent disability, not a total and temporary disability. The period of three months specified by the contract is doubtless for the purpose of preventing and relieving the insurer of the burden and expense of having to consider and investigate numberless premature claims. After total disability has existed for three months the illness or disease causing it has ordinarily reached a stage where a prognosis as to its permanency may be made. The existence of total disability for a period of three months does not raise a presumption that it will be permanent but it has existed for a sufficient length of time to warrant consideration and investigation to determine the question of its permanency. While it may appear that the length of the period is arbi-

trarily fixed, some period had to be adopted and the one adopted is the one the insurers have found by experience to be reasonable and equitable to both the insured and the insurer."

It is contended by plaintiff that the contract contemplates the payment of benefits when the disability is total but which may eventually prove not to be permanent, and cites in support of his position that part of the contract to the effect that although the proof of disability is accepted as satisfactory and payments commenced, such payments shall cease if the insured's condition becomes such that he can again do work for compensation or profit.

Determining the nature of a disability—whether temporary or permanent—must necessarily depend largely upon expert testimony, the opinions of physicians skilled in diagnosing ailments to which the human body is subject. If the doctor's report on a particular case shows that the disability is permanent, that is accepted as true and the company would begin to make the payments to the insured stipulated in the agreement. No one will concede the infallibility of any physician's opinion in certain cases of disability. At best it is only an opinion based upon physical and other conditions and symptoms existing at the time, and it is to guard against the possible errors of diagnosis that this stipulation is found in the contract. The doctor's opinion should not be final as against subsequent developments in the insured's condition which contradict the opinion.

In the "Statement of Claimant" filled out and signed by plaintiff on September 30, 1927, this question was asked:

"Q. When is it expected that work will be resumed?"

To which he answered:

"In 4 or 5 months."

The statement of Dr. P. T. Alexander, attending physician, whose report defendant acted upon, contains the following questions and his answers thereto:

"Q. What is the prognosis? A. Ultimate recovery.

"Q. If totally disabled at present time, will such total disability become permanent? A. No.

"Q. If the total disability will not be permanent, when may work be resumed? A. Likely 4 to 6 months."

Both plaintiff and Dr. Alexander had very reliable opinions as to the term of disability, for plaintiff resumed work on January 5, ninety-seven days after these statements were made. It is clear from the answers of plaintiff and his attending physician the disability was not considered permanent, but on the contrary both were able to foresee an early end to it.

We have not found a Louisiana case wherein this supplementary contract has been considered by the courts, nor have we been cited to any. Courts of other jurisdictions have interpreted the contract in cases where the facts are exactly as disclosed in the instant case, including those of New York, Pennsylvania, Mississippi, Tennessee, Texas, Iowa, and Quebec. All these courts hold that for the insured to be entitled to the benefits under the contract the disability must be really permanent, or at least the proof must show such to be the condition. The jurisprudence of other states support a construction agreeable to that which plaintiff advances, but the distinct weight of the authorities is in favor of the construction we have herein adopted.

"The policy must be construed with reference to the express terms of the contract, and therefore the word 'permanent' in connection with the word 'disability,' and the obvious purpose of the contract, will be held to exclude the consideration of a disability which is merely temporary." Couch's Cyclopedia of Insurance Law, vol. 7, § 1672.

"Where the policy provides that the injury must be permanent as well as total, no recovery can be had for an injury which is but temporary." 1 Corpus Juris, p. 466.

The New York Court of Appeals, in the case of Ginell v. Prudential Insurance Co., 237 N. Y. 554, 143 N. E. 740, had this question squarely before it. The case had been decided by the intermediate appellate court with Justice Van Kirk dissenting. 205 App. Div. 494, 200 N. Y. S. 261, 262. The intermediate court placed a construction on the contract in line with that which plaintiff in the present case contends for. The Court of Appeal reversed that decision and adopted the dissenting opinion of Justice Van Kirk as its own opinion. This opinion in full follows:

"Van Kirk, J. (dissenting). In my view, the insurance policy should receive a construction other than that adopted by the trial court and approved in this court. The contract is a life insurance policy for $1,000, payable at the expiration of 20 years, or at the death of the insured within that period; if the death shall occur by accident, $2,000 is payable. In addition to this moving cause for the policy, there are incidental lesser provisions: If the insured suffers total and permanent disability, the premiums are waived during the disability and he receives $10 per month, the first monthly payment to be made 6 months after the company receives proof of such total permanent disability. The total premium is $12.13, payable quarterly. The policy specifies the proportion of this premium applicable to each of the liabilities in the policy, and the extra quarterly payment added for the total and permanent disability benefit is 11 cents—44 cents per year.

"The construction approved gives no natu-

ral meaning to the word 'permanent.' If the meaning approved be the true meaning, the word 'permanent' could as well have been omitted from the policy, or the word 'temporary' substituted. Under the terms of the policy the premium is to be waived, and the payment made, if due proof to the company of the total permanent disability be made. The payment is not dependent upon actual total permanent disability, but on proof of such; and it is no uncommon experience that that is established by proof to be a fact which in truth was never a fact. The policy defines certain losses of members which shall conclusively establish permanent total disability, but leaves it open to proof that total permanent disability exists due to other inflictions or afflictions. The insured did not suffer a permanent total disability within the class defined as such. It must have been a matter of common understanding between the parties to such insurance policy that a condition which at the time appeared to cause total and permanent disability would often improve; and it is very natural to provide in the contract that, if that which appeared to be a total permanent disability did improve, the benefits should not be realized. The provision that the benefits should be realized during the continuance of the total disability only does not indicate to me that the parties contemplated that the word 'permanent' was a synonym of 'temporary,' in light of the (to me) significant fact that the benefits are to be realized upon proof of total disability being furnished, rather than upon actual total disability. The realization of the benefits is to begin 6 months after the proof is furnished. This is said to indicate that the total disability which continued for 6 months is to be considered permanent disability within the meaning of the policy.

"There is another view that can be taken of this. Inasmuch as the benefits are to be paid upon proof of disability, there were 6 months allowed as days of grace to confirm the proof before any payments need be made. The insurance company in this case refused to allow any of the benefits for total permanent disability, on the ground that the proof did not show total permanent disability. If the word 'permanent' in the policy has any natural meaning at all, there was no proof furnished of a total permanent disability. Each doctor said he would recover, and one of the physicians named the time about one year with accuracy; the other named a longer period than was required for recovery. One physician said plaintiff was not suffering from a total permanent disability; the other said he was, but stated the time within which he would probably recover. How can this evidence be held to furnish proof of total permanent disability, without which proof the benefits are not to be enjoyed? The physician's statement that plaintiff was suffering from a permanent disability is but his construction of the contract, not his opinion of plaintiff's condition.

"There is a natural feeling that, after an insurance company has received its premium, it ought not to be allowed to avoid its responsibility, and the just rule is that policies should be construed strictly against the company which has drafted its provisions. But to secure these benefits an additional premium of 44 cents a year is paid. It certainly could not have been expected by the parties that the risk of liability under this clause was considerable; and, where the words used have a common and ordinary meaning, it seems to me the defendant is entitled to the benefit of that. The learned justice at the Trial Term cited a number of authorities and illustrations indicating that the word 'permanent' does not always mean 'forever' (119 Misc. Rep. 467, 196 N. Y. S. 337); but he has cited none which indicate that the word 'permanent' sometimes means 'temporary,' and in no case was the word 'permanent' given a construction in conflict with its ordinary meaning in the connection used."

This opinion, according to our judgment, contains unanswerable logic and reasoning. It has been adopted by insurance text-writers as the leading authority on this important question.

In Hawkins v. John Hancock Mutual Life Insurance Co., 205 Iowa, 760, 218 N. W. 313, 314, inter alia, the court said:

"The language used must be given its usual and ordinary meaning, unless the instrument taken as a whole shows that a different or special meaning was intended or is required in order to obviate an unreasonable or absurd result. * * *

" 'Permanent' cannot be given the meaning of its antonym 'temporary'. Unless it means 'permanent,' it has no practical significance.

"In the light of these considerations we are of the opinion that the plaintiff must fail. The proofs offered by him to the company in support of his claim show that at the time they were made the insured was not wholly disabled; that he was slowly improving. To the question, 'Are you totally disabled at the present time so that you will be permanently prevented from the pursuit of any form of mental or manual labor for compensation, gain or profit whotsoever?' plaintiff answered, 'No; not since November 1, 1925.' * * *

"Plaintiff places great reliance on paragraph 5 that the company shall have the right ·to require proof of continuance of the disability, and, if insured fails to furnish it, or, if he shall so far recover as to be able to perform remunerative work of any kind, the disability benefits will be discontinued. The company, though reasonably satisfied that the disability is permanent and willing to pay the benefits, may still have doubts. In view

of such possibilities, it retains the right to discontinue if it shall later appear that the disability is temporary."

In the case of Conley v. Pacific Mutual Life Insurance Co., 8 Tenn. App. 405, the questions presented in the case at bar were gone into at length and discussed and passed on by the Tennessee court. Many authorities are cited and quoted from in support of the court's decision. In the course of the court's reasoning it said:

"The 'plain, ordinary and popular' understanding of the adjective 'permanent' is in accord with the definition given in Webster's New International Dictionary (1925 Edition), as follows: 'Continuing in the same state, or without any change that destroys form or character; remaining unaltered or unremoved; abiding; durable; fixed; stable; lasting.'

"The antonym of permanent is 'temporary'; and in 1 Corpus Juris, p. 466, Sec. 177, it is said: 'Where the policy provides that the injury must be permanent as well as total no recovery can be had for an injury which is but temporary.' * * *

"In 5 Joyce on Insurance (2d Ed.), Sec. 3035, it is said: 'The policy must be construed with reference to the express terms of the contract, and therefore the word "permanent," in connection with the word "disability" and the obvious purposes of the contract, will be held to exclude the consideration of a disability which is merely temporary.'"

The following cases support the views announced in the foregoing cases quoted from: Leduc v. Metropolitan Life Insurance Co., 65 Quebec Sup. Court 320; Home Benefit Association v. Brown (Tex. Civ. App.) 16 S.W.(2d) 834; Shipp v. Metropolitan Life Insurance Co., 146 Miss. 18, 111 So. 453.

The contract in question being free from uncertainty and ambiguity should be construed as written.

For the reasons herein assigned, the judgment of the lower court is reversed, annulled, and set aside; and plaintiff's suit is hereby dismissed and his demands rejected, at his costs.