JOHN G. GRAHAM, Appellee, v. EQUITABLE LIFE ASSURANCE SOCIETY of the United States, Appellant.

No. 42921.

MAY 5, 1936.

Cook & Balluff, for appellant.

Howard E. Kopf and Lane & Waterman, for appellee.

ALBERT, J.—The plaintiff, Graham, held three policies of insurance in the defendant company. One of them, during the time involved herein, was lapsed. He still held a $10,000 policy issued on February 17, 1925, and a $5,000 policy issued on February 19, 1923. Both policies provided for payment, under certain conditions, for total and permanent disability. The larger policy provided for payment of $100 per month, and the other policy provided for payment of $50 per month.

The action herein, based on these policies, attempts to allege a cause of action under the total and permanent disability clause, which was identical in the two contracts except as to the amount. The allegation is, in each count of the petition, that during the period from the 17th of September, 1931, to on or about the 27th of July, 1932, the plaintiff was disabled due to illness and was prevented thereby from engaging in any occupation or performing any work for compensation of financial value. The clauses of the policies involved are as follows:

"If the Insured becomes wholly and permanently disabled before age 60, the Society will waive subsequent premiums and pay to the Insured a Disability-Annuity of One Hundred Dollars a month, subject to the following terms and conditions:

"(1.) Disability benefits before age 60 will be effective upon receipt of due proof, before default in the payment of

premium, that the Insured became totally and permanently disabled by bodily injury or disease after this policy became effective and before its anniversary upon which the Insured's age at nearest birthday is 60 years, in which event the Society will grant the following benefits:

"(a) (Waiver of payment of all premiums during the continuance of the disability);

"(b) (Pay to insured a monthly disability-annuity as above stated during the continuance of the total and permanent disability).

"Disability shall be deemed to be total when it is of such an extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such total disability shall be presumed to be permanent when it is present and has existed continuously for not less than three months; and, further (certain matters not here involved), will of themselves be considered as total and permanent disability within the meaning of this provision.

"The right is reserved for two years after the receipt of proof of disability (not more than once a year) to require proof of the continuance of such total disability. If the Insured shall fail to furnish satisfactory proof thereof, or if it appears at any time that the Insured has become able to engage in any occupation or perform any work for compensation of financial value, no further premiums will be waived and no further Disability-Annuity payments will be made hereunder on account of such disability."

A jury was waived and the case was tried to the court, which allowed the plaintiff judgment for disability compensation on both policies from the 19th of December, 1931, to the 26th of July, 1932. From this judgment the defendant appeals.

It is apparent from what has already been said that the plaintiff, by his own pleading and by his testimony, claims under the disability clause from the 17th of September, 1931, to the 27th of July, 1932, when he became engaged in gainful and financial employment. We turn, therefore, to the terms of these contracts with the plaintiff to determine whether or not he was entitled to this compensation during the time for which he claims it. What was the contract between these parties? Briefly stated, the defendant company says to the plaintiff: "If you

become totally and permanently disabled, by disease, after this policy becomes effective, we will grant you certain waivers of premiums during the continuance of such total and permanent disability, and pay you certain monthly amounts." It will be noted that the disability for which the company agreed to pay was not only a total disability, but that such disability must also be permanent; and it is by reason of the latter provision that the dispute arises in this case.

As heretofore said, the plaintiff himself testifies that he went into a gainful employment on the 27th of July, 1932. It is apparent that under the terms of the contract both parties must have understood that unless the disability was permanent the insured was not entitled to any benefits under the terms of the policy. In other words, if the disability was "temporary" it is not covered by the policy. True it is that the policy provides that in the event the disability is total, and lasts for more than three months, it is presumed to be permanent. The contention of the defendant is that the provision as to the presumption of permanency does not give rise to a cause of action in this case because the plaintiff himself testifies that the disability was not permanent. This action was not commenced until after the plaintiff had engaged in financial employment. We are, therefore, required to determine whether or not, under a policy of this kind, recovery can be had for total and permanent disability, when the plaintiff's own evidence shows to a certainty that at the time the action was commenced the disability complained of was not permanent.

We have formerly expressed ourselves on the interpretation of policies of this character and have held that where the evidence in the case shows at the time of the trial that the disability complained of was not permanent, but only temporary, recovery could not be had. This is the substance of our holding in the case of Hawkins v. John Hancock Mutual Life Ins. Co., 205 Iowa 760, 218 N. W. 313, where numerous cases are gathered together sustaining this doctrine.

It is true that the Minnesota Supreme Court has held to the contrary in the case of Maze v. Equitable Life Ins. Co. of Iowa, 188 Minn. 139, 246 N. W. 737.

The Iowa Supreme Court, in the decision just cited, refers back to a New York decision, Ginell v. Prudential Ins. Co. of America, 205 App. Div. 494, 200 N. Y. S. 261, Id., 237 N. Y.

554, 143 N. E. 740, in which a former decision of the Supreme Court of that state is reviewed, and the holding of the Appellate Court was that no recovery could be had. While the Iowa Supreme Court followed the New York court in the Ginell case, the Minnesota Supreme Court refused to follow that rule.

A case in line with the Ginell case is Mitchell v. Equitable Life Assurance Society of United States, 205 N. C. 725, 172 S. E. 497, 499. In the North Carolina case the defendant was the defendant in this case, under the same kind of a policy as is involved here. The court said, in part:

"There is a natural feeling that, after an insurance company has received its premiums, it ought not to be allowed to escape liability or to avoid responsibility, and the just rule is that policies will be construed strictly against the insurers and in favor of the assured. * * * 'The policy having been prepared by the insurers, it should be construed most strongly against them.' * * * But it is not the province of the courts to construe contracts broader than the parties have elected to make them, or to award benefits where none was intended."

It was also held in that case that the presumption arising from total disability for three months is not conclusive.

In the case of Lawrence v. Equitable Life Ins. Co. of Iowa, 128 Neb. 72, 257 N. W. 530, 533, the Nebraska Supreme Court had before it a similar case, which involved the construction of a policy where the plaintiff and defendant were both residents of Iowa; the policy was issued and delivered in this state; premiums were payable to the defendant in this state; and any benefits accruing to the plaintiff were payable in Iowa. The Nebraska court was there called upon to apply the Iowa law to the case it had before it. It bottomed its decision on the case of Hawkins v. John Hancock Mutual Life Ins. Co., 205 Iowa 760, 218 N. W. 313. It reviewed all the decisions of this state affecting this proposition, and held that there could be no recovery. In that case, as in this, much stress was laid on the case of Kurth v. Continental Life Ins. Co., 211 Iowa 736, 234 N. W. 201. It is said by the Nebraska court in that opinion:

"It appears clear that in the Kurth case the Iowa court was not receding from its holding in the Hawkins case."

We are disposed to agree with the holding of the Nebraska

case that the Kurth case in no way recedes from our holding in the Hawkins case.

In the Kurth case the accident occurred on the 8th of March, 1928, and the action was commenced on the 9th of March, 1929. The real contention was as to whether or not the fact situation measured up to the requirements of the policy on the phase of total and permanent disability. No reference was made in brief or argument to the Hawkins case, as the controlling question on which the Hawkins case turned was not raised or discussed in the submission of the Kurth case.

The dissenting opinion herein is based wholly upon the case of Kurth v. Continental Life Ins. Co., 211 Iowa 736, 234 N. W. 201. That case has no bearing whatever on the question we have under consideration. In that case the action was brought while the claimant was still laboring under his disability, and, of course, he would be entitled to the presumption provided for in the policy under such circumstances; whereas, in the instant case, in exact line with the Hawkins case, the claimant had fully recovered from his disability at the time the action was brought. The distinction between the two cases is so marked that it ought not to be misunderstood.

We think that the clause in the contract providing for this presumption is wholly an evidentiary matter. It was not intended to create or enlarge liability, and was put in the policy only for the benefit of the claimant, to reduce the difficulties of proving the permanency of the disability, and does not have any force or effect in the instant case, where the evidence conclusively shows that prior to the time of the commencement of the action the disability was removed and ceased to be permanent.

The Ginell case, supra, has been followed in the following cases: Lewis v. Metropolitan Life Ins. Co. (La. App.) 142 So. 262; Brod v. Detroit Life Ins. Co., 253 Mich. 545, 235 N. W. 248; Mitchell v. Equitable Life Assur. Soc. of United States, 205 N. C. 725, 172 S. E. 497, 499; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; Job v. Equitable Life Ins. Co., 133 Cal. App. (Supp.) 791, 22 P. (2d) 607. Our pronouncement in the Hawkins case has been cited with approval in each of the cases above designated.

Outside authorities sustaining our holding that the plaintiff cannot recover in this case will also be found in Metropolitan

Life Ins. Co. v. Noe, 161 Tenn. 335, 31 S. W. (2d) 689, and Mackenzie v. Equitable Life Assur. Soc., 140 Misc. 655, 251 N. Y. S. 528. Other authorities throwing light on these questions are: Shipp v. Metropolitan Life Ins. Co., 146 Miss. 18, 111 So. 453; Home Benefit Ass'n v. Brown (Tex. Civ. App.) 16 S. W. (2d) 834; Leduc v. Metropolitan Life Ins. Co., 65 Quebec Official Law Reports, 320.

Our conclusion, therefore, is that the Iowa court is committed to the doctrine laid down in the Hawkins and Ginell cases, and, under the fact situation in the case at bar, the plaintiff is not entitled to recover.—Reversed.

DONEGAN, C. J., and KINTZINGER, PARSONS, and STIGER, JJ., concur.

RICHARDS, J., takes no part.

MITCHELL and ANDERSON, JJ., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority, and therefore respectfully dissent.

The majority bottom their opinion upon the decisions of Hawkins v. John Hancock Mutual Life Ins. Co., reported in 205 Iowa 760, 218 N. W. 313; Ginell v. Prudential Ins. Co., 237 N. Y. 554, 143 N. E. 740; Garden v. New England Mutual Life Ins. Co., 218 Iowa 1094, 254 N. W. 287.

So it becomes necessary to examine what the policy in each of these cases provides:

In the Garden case the clause reads as follows:

"Upon receipt of due proof that the Insured has become * * * incapacitated so as to be wholly and permanently unable to engage in any occupation or profession or to perform * * * and that such disability * * * has existed for a period of ninety days, the Company will pay to the Insured * * *."

No presumption arises from ninety days continuance, which is merely a condition precedent to the allowance of benefits if the disability is in fact permanent.

In the Hawkins case the policy provides:

"If * * * the insured shall become wholly and permanently disabled * * * so that thereby he will be wholly, continuously,

and permanently prevented, * * * and has been so disabled for not less than sixty days * * * the company will grant * * * .''

Again we find that the sixty-day period raises no presumption, but is merely a further condition.

In the Ginell case the provision is not set out in the opinion, but there is no reference to any presumption whatever.

In the case at bar the disability clause reads as follows:

"Disability shall be deemed total when it is of such an extent that the insured is prevented thereby from engaging in any occupation—for compensation of financial value, and such Total Disability shall be *presumed* to be Permanent when it is present and has existed continuously for not less than three months.''

The distinction is plain. All the cases above referred to require that the disability be permanent and afford no benefit of presumption in determining whether it is . The policy in the case at bar defines "total disability" and then provides that such total disability shall be *presumed* permanent after ninety days continuance, thus itself defining what is meant by the use of the term "permanent," namely, a total disability which exists when the proof is filed and which has existed continuously for ninety days.

But, the majority argue that because the action was commenced after the disability was removed and ceased to be permanent, the insured is not entitled to recover. I cannot agree with this because in the case at bar it appears without serious dispute that Graham was totally disabled when he filed the formal proofs of loss. True, he did not commence his action until after his recovery, but the obligation to pay arose when he filed his proofs of loss showing that he was totally disabled for a period of not less than three months. No liability arose until the claim was made and the proofs submitted or waived, but the moment he complied with the terms of the policy by filing the necessary proofs of loss, which was done in this case, he was entitled to the benefits of the policy, even though his action was not commenced until after he had recovered. To me it seems unthinkable that the clause which provides for a presumption by continuance of disability for a prescribed period was not intended to fix the liability of the insurer from the date

that the proof of loss was filed to the date of termination of disability. To say that one who has filed a proof of loss while still totally disabled cannot recover, while one who commences his suit during the period of disability can recover, is splitting hairs and indulging in overrefinement of reasoning to arrive at a clearly unintended result, because the disability in both cases was identical, and he is excluded from recovering simply because he did not bring suit, although he did comply with the terms of the policy and file proof of loss, while totally disabled.

It is interesting to note that in the Hawkins v. John Hancock Mutual Life Ins. Co. case relied upon so strongly by the majority, the disability had terminated before the proofs were filed, which is an entirely different situation than we have in the case at bar, where the proofs were filed before the disability terminated.

To me it seems that this case is controlled by the case of Kurth v. Continental Life Ins. Co., reported in 211 Iowa 736, at page 738, 234 N. W. 201, 202, where it is said:

"It is seen that, upon the happening of the contingency insured against,—that is, the suffering of total and permanent disability, as defined,—the company, upon satisfactory proof thereof, agrees to waive the future premiums which may thereafter become due on the policy and during the continuance of such disability, and to provide for such payments by indorsing the agreement on the contract itself; and further, six months after the date of such indorsement, upon proof of the continuation of such disability, to pay one-tenth of the face of the policy, or, in this instance, $500, to the insured, and annually thereafter to pay a like sum during the life and continued disability of the insured. There appears to be no ambiguity in these provisions, and they should cause no particular difficulty in construing them, except as respects the starting point. As said before, the contingency insured against is that the insured has been wholly disabled for a period of not less than 60 days, and that such disability so suffered is *presumably* permanent, and that he will be wholly and continuously prevented thereby from pursuing any gainful occupation. This may be clarified by analysis in this manner: If the insured has been wholly disabled (a) for a period of not less than 60 days; and (b) such disability as has existed for not less than 60 days is pre-

sumably permanent, and (c) the insured will be wholly and continuously prevented by the disability that has existed for a period of not less than 60 days and which disability is presumably permanent, from pursuing any gainful occupation. It would thus appear that these three separate factors were combined, and that upon the combination only are the benefits to accrue.

"If the construction sought to be placed on the policy by the defendant insurance company should prevail, the waiver of premiums would then mean nothing; secondly, the installment payment provisions would mean nothing, as they, if any there be due, are to be paid to the insured himself. The fact is that the use of the word 'presumably' in connection with 'permanent' is sufficient to destroy the idea that it was intended that the absolute certainty of the permanency and the absolute certainty of the continuance of the disability should prevail. The word 'presumably' is a comparative adverb, as used in this instance, and by its very nature precluded the idea of an absolute, lasting, or fixed condition. Its meaning is: fit to be assumed as true in advance of conclusive evidence; credibly deduced; fair to suppose; by reasonable supposition or inference; what appears to be entitled to belief without direct evidence. Webster's New International Dictionary. By the employment of this word 'presumably,' it is clear that there might be some question, at present or in the future, concerning the permanency and continuancy of the described disability. It next follows that the phrase 'and that he will be wholly and continuously prevented thereby' must be construed as not implying absolute certainty, but as a reasonable and fair presumption that 'he will be wholly and continuously prevented thereby from pursuing any gainful occupation.' The words, 'permanently' and 'continuously,' standing alone, would imply that the disability was a lasting and absolutely fixed condition; but when these words are taken in connection with the language used in other provisions of the contract, the only fair construction to be placed on such words is, not that the disability which has existed during sixty days must exist forever, but that such disability has existed for a period of not less than sixty days and by a fair presumption will continue for a future period. Penn Mut. Life Ins. Co. v. Milton, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1382.

To sustain this point, we quote another clause of the contract as follows:

" 'After accepting proofs of disability under this policy the company shall have the right at any time thereafter, but not more frequently than once a year, to require proof of the continuance of such disability; and if the insured shall fail to furnish such proof, *or if it appears that the insured has so far recovered as to be able to engage in any gainful occupation,* the company's obligation to pay the premiums and installments shall cease.'

"By the insertion of the foregoing clause in the contract, it is obvious that the disability by which the benefits may accrue and become obligations of the company is not absolutely expected to be absolutely permanent and absolutely continuous and to absolutely prevent the insured during his after lifetime from engaging in any gainful occupation; because this insertion was intended to govern when and if such presumably permanent disability might be removed by some means or other, and the company desired what benefits it might have by reason of such removal. It must, therefore, be held, as a matter of law, that the insured, under this contract, was required to furnish proofs only of the fact that he had been wholly disabled by bodily injury or disease for a period of not less than 60 days, and that such disability is presumably permanent, and that he will be presumably wholly and continuously prevented thereby from pursuing any gainful occupation."

The provisions in the policy in the case at bar are almost identical with the provisions in the policy in the Kurth case. In the majority opinion the only attempt to show that the Kurth case—which was filed later than the Hawkins opinion—did not overrule the Hawkins opinion is the quotation from the Nebraska case, Lawrence v. Equitable Life Ins. Co. of Iowa, reported in 128 Neb. 72, 257 N. W. 530, at page 533, in which the Nebraska Supreme Court had before it a similar case, and in which it said:

"It appears clear that in the Kurth case the Iowa court was not receding from its holding in the Hawkins case."

But I find that the Minnesota Supreme Court has had this same question before it, and that distinguished court in the case of Maze v. Equitable Life Ins. Co. of Iowa, 188 Minn. 139, 246

N. W. 737, on page 740, in which case the disability had terminated or ceased to be total before the action was commenced, which is the exact point involved in the case at bar, does not agree with the Nebraska court and holds:

"It seems to us that the Kurth case is strong authority in support of the contention of the plaintiff."

To me it seems that this case is controlled by the Kurth case, and until that opinion is overruled it should be followed.

Accordingly, I would affirm the decision of the lower court.

ANDERSON, J., joins in this dissent.