JOHN GUSAEFF, PLAINTIFF-RESPONDENT, v. JOHN HAN-
COCK MUTUAL LIFE INSURANCE COMPANY, A BODY
CORPORATE, DEFENDANT-APPELLANT.

Argued October 7, 1936—Decided June 15, 1937.

Before Justices TRENCHARD, BODINE and HEHER.

For the appellant, *McCarter & English* (*Verling C. Enteman,* of counsel).

For the respondent, *Skolkin & Cohen* (*Jack Rinzler,* of counsel).

The opinion of the court was delivered by

HEHER, J.   The District Court judge, sitting without a jury, awarded plaintiff disability benefits under a clause of a policy of life insurance, issued to him as the assured by the defendant company, obligating the insurer to pay such benefits if, after the payment of one full year's premium on the policy, the insured "shall become *wholly and permanently disabled* by bodily injury or disease sustained or contracted after the date" thereof, "so that thereby he will be *wholly continuously and permanently prevented* from the pursuit of *any form of mental or manual labor for compensation, gain or profit whatsoever,* and has been so disabled for not less than sixty days  *  *  *." Liability was expressly conditioned upon "the receipt of due proof of such disability." Defendant appeals.

The first insistence is that the furnishing of "due proof" of such disability is a condition precedent to the right of recovery, and there is no evidence of compliance with that requirement.

We think the proofs support a finding of waiver of the provision by the insurer.   On this point, the case seems to be ruled by *Teitelbaum* v. *Massachusetts Accident Co.,* 13 *N. J. Mis. R.* 811; *affirmed,* 116 *N. J. L.* 417.

But the inquiry need not be pursued.   We perceive no basis in the evidence for the finding that the insured is "wholly and permanently disabled," within the intendment of the policy provision; and it was therefore error to deny the insurer's motions for a nonsuit and a directed verdict.

The insured is a house painter by trade. In his application for the policy in suit, he stated his "present occupation" to be that of a "contractor painter;" and he admitted that he has engaged in that pursuit to some extent since he sustained his injuries, which consisted of a fracture of the pelvic bone and a comminuted fracture of the tibia of the right leg. It is conceded that he has had "a marvelous recovery." His own physician described it as "a lucky one." The pelvic break has completely healed, and there is little or no consequent disability. As to the fractured tibia, "the alignment was satisfactory." And "the recovery in general * * * was satisfactory," although at the time of this physician's "last complete physical examination,"—in the latter part of January, 1934, less than a year before the trial—plaintiff suffered from swelling of the ankle. But he was then "no longer totally disabled." His physician expressed the opinion that at that time he was laboring under a disability of only ten or twelve per cent. of total; that he was able to pursue his occupation to some extent; and that he "could resume his usual occupation in four or five months." This evidence was adduced by the insured.

The accident occurred on September 11th, 1933. Plaintiff testified (on February 7th, 1935) that, for a period of ten months thereafter, he was required to use, first, a crutch, and then a cane, and during that interval was unable to do any work at his calling, except "one job." But this, he later explained, was in October, 1934, when he "was the contractor" for the painting of a house. The work was done by hired painters under his supervision; he also painted the doors. He said that, during this ten months' period, he could do "nothing" himself; that he was "tired out," and suffered from a swelling of the foot; and that "even to-day it is swollen."

Pertinent to the basic inquiry is the testimony of plaintiff that, prior to the accident, he was a "boss painter;" he worked "both as boss painter and individually." He was also in the general "building and contracting business," and built the apartment house wherein he lived. At the time of

trial, he superintended this apartment house for the owner. Concededly, he was then able to conduct the general painting and contracting business carried on before he sustained the injuries in question.

Thus it is that the evidence does not warrant the conclusion that plaintiff was rendered wholly incapable of pursuing the occupation followed at the time of the issuance of the policy. But, assuming the contrary, the testimony affords no basis for the finding that it is "permanent" within the intendment of the contract.

To entitle plaintiff to the disability benefits awarded him, there must needs be a concurrence of both elements; neither alone will suffice. In the interpretation of such policies, the point of inquiry is, as in the case of all other integrated contracts, the intention of the parties expressed or apparent in the writing itself. Subject to certain qualifications not relevant here, the standard of interpretation of an integrated agreement is the meaning that would be attached to the integration by "a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the writing, other than oral statements by the parties of what they intended it to mean." *Corn Exchange National Bank and Trust Co.* v. *Taubel,* 113 *N. J. L.* 605; *Clott* v. *Prudential Insurance Co.,* 114 *Id.* 18; *affirmed,* 115 *Id.* 114.

In the absence of restraining statutory provisions, such insurers have the right to limit their liability; and the judicial function of exposition is not to be extended to the imposition of terms not within the plain sense and meaning of the language employed to express the common intention. This interpretative authority must be kept within its legitimate bounds; its exercise is not to be a guise for the foisting of a new contract upon the parties. Such contracts are to be given a reasonable and sensible interpretation consonant with the apparent object of the parties. The natural and ordinary significance of words, both singly and in collocation, is adhered to, unless a special meaning is shown by the context or the circumstances, or the language, viewed as a whole,

gives rise to uncertainty or ambiguity. *Zurich General Accident and Liability Insurance Co., Ltd.,* v. *American Mutual Liability Insurance Company of Boston,* 118 *N. J. L.* 317.

The word "permanent" has different senses; and, in the interpretation of contracts, it takes its meaning from associated words and the context. Here, it is plainly used in the sense of "continuing or enduring in the same state, status, place or the like, without fundamental or marked change; not subject to fluctuation or alteration; fixed or intended to be fixed; lasting; abiding; staple." Webster's New International Dictionary (second edition). Antonyms are "temporary, transient." Such is its normal significance; and the giving to the word, as used in the stipulation under review, a less extensive scope and meaning would do violence to the plain letter and spirit of the contract. We discover nothing in the context or the circumstances to serve as the occasion for invoking any of the secondary rules of construction in aid of the application of the primary standard of interpretation. Of this more hereafter.

The apposite principles were applied in the dissenting opinion of Mr. Justice Van Kirk in *Ginell* v. *Prudential Insurance Co.,* 200 *N. Y. Supp.* 261, adopted by the Court of Appeals on reversal of the judgment (237 *N. Y.* 554; 143 *N. E. Rep.* 740) ; and also in *Hawkins* v. *John Hancock Mutual Life Insurance Co.,* 205 *Ia.* 760; 218 *N. W. Rep.* 313; *LeDuc* v. *Metropolitan Life Insurance Co.,* 65 *Q. L. R.* 320; *Conley* v. *Pacific Mutual Life Insurance Co.,* 8 *Tenn. App.* 405; *Metropolitan Life Insurance Co.* v. *Blue,* 222 *Ala.* 665; 133 *So. Rep.* 707; *Lewis* v. *Metropolitan Life Insurance Co.* (*La.*), 142 *So. Rep.* 262.

The cases of *Teitelbaum* v. *Massachusetts Accident Co., supra,* and *Nickolopulos* v. *The Equitable Life Assurance Society,* 113 *N. J. L.* 450, are not in point. They are not factually similar; and in the last cited case the contractual provisions were essentially different. Nor does the policy in suit contain, as in *Clott* v. *Prudential Insurance Co., supra,* a provision that continuous total disability for a given period raises a presumption of permanency entitling the insured to disability benefits until the termination of such incapacity.

And the clause providing that the insurer "shall have the right to require at any time, but not oftener than once a year, due proof of the continuance of the disability," as a prerequisite to continued liability for disability benefits, does not lead to a different result. This is a mere reservation of the right to terminate the insurer's liability for benefits where later developments demonstrate that the permanency testimonially categorized as a probability, upon which the law proceeds in the enforcement of the insurer's obligation to render such benefits, was but seeming and not real. This is plainly a reasonable exercise of the right of private contract, not violative of statute or public policy; and the courts have no alternative but to effectuate it.

The evidence therefore fell far short of the standard of proof of the contractual liability sought to be enforced.

The judgment is accordingly reversed, and a *venire de novo* awarded, costs to abide the event.