---

NATIONAL LIFE & ACCIDENT INS. CO. v. M. B. KING.

[59 South. 807.]

1. OCCUPATION OR ACCIDENT INSURANCE. *Risks. Sick benefits. Time.*

In a suit by assured on an occupation or accident policy which in one section provides that insured shall be paid at the rate of ten dollars per week for the number of consecutive days, after the first seven, that the insured is necessarily and continuously confined within the house and in another section provides for indemnity for the period the insured is "disabled" not exceeding four weeks; the real test of plaintiff's right to recover depends upon whether he was disabled, during the time limit, to perform the duties required of him by his employment and not that he was actually confined to his house.

2. INSURANCE.  *Sick benefit.  Limitations as to time.*    .
   Where, in a suit by assured on a sick benefit policy, the policy
      provides that "weekly benefits for sickness will only be paid
      when the assured has been confined strictly to his or her bed for
      seven consecutive days," and the evidence shows that he was
      confined to his bed for seven consecutive days and there is no
      provision in the policy which excludes the first week of sickness
      from the benefits of the indemnity, the assured is entitled to
      recover for the first seven days of his sickness, as well as the
      other days covered by the policy.                        ˙

APPEAL from the circuit court of Alcorn county.

HON. JNO. H. MITCHELL, Judge.

Suit by M. B. King against the National Life and Accident Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*W. J. Lamb,* for appellant.

"Contracts of insurance must have effect like all other written contracts. The intention of the parties must govern and control, and when the language is plain and unambiguous, such intention must be gathered from such language. In such case the court simply ascertains the language the parties themselves have agreed to and written down in their contracts, and enforces it according to its legal effect." *Weidert* v. *State Ins. Co.,* 20 Am. St. Rep. 813.

The appellee in this case can claim no rights which are not expressed in the terms of his contract of insurance. According to the doctrine laid down in the last case, *supra,* the court simply ascertains the language the parties themselves have agreed to and enforces it according to its legal effect. What is the language to which the parties themselves agreed? "Weekly benefits for sickness will only be paid when the insured has been confined to his or her bed for seven consecutive days." Was the insured confined to his bed for seven consecutive days? He was not. Under these facts, where is his

o

right to recover under this policy? By what is the court to measure the rights of the parties? Nothing but the insurance contract can guide and direct the court, and what does the insurance contract say? The insured must be confined strictly to his bed for seven consecutive days.

"The certificate of insurance is to be regarded as a written contract, and, so far as it goes, it measured the rights of all parties." 29 Cyc. 65; *Bloch* v. *Valley Mut. Ins. Assn.*, 52 Ark. 201; *Chartrand* v. *Brace*, 16 Colo. 19.

Another principle which governs the court in the construction of this contract is that the intention of the parties must govern and control, and, when the language is plain and unambiguous, such intention must be gathered from the language of the contract. •

No matter what the insured may have thought when he received his policy, the language is plain and susceptible of but one construction, namely: to recover he must be confined strictly to his bed for seven consecutive days, and the certificate of insurance plainly states this to be a conditon necessary before there can be any recovery.

In the last case, *supra*, the court says:

"In construing this statute, which is plainly declaratory of the common law, we have held that, if the language is plain, it cannot be used for the purpose of making the contract conform to the notions of one of the parties executing it." *Peterson* v. *Modern Brotherhood of Am.*, 67 L. R. A. 632; *Congower* v. *Equitable Mutual L. & Endowment Ass'n.*, 94 Iowa, 499.

We submit to the court as a correct proposition of law that the appellee is bound by the terms of his policy after the same has been delivered and accepted by him unless there was some mistake or fraud perpetrated on him. In this case there is no contention that there was either.

"After an unqualified acceptance of a policy there is a binding contract, and both the insured and the company

are bound by the terms of the policy, in the absence of fraud or mistake, even though the policy varies from the application. The insured is charged with knowledge of statements contained in the policy in the absence of fraud." 25 Cyc. 723; *Johnson* v. *White,* 120 Ga. 1010; *Rodder* v. *Tolbert,* 115 N. C., 287; *Hutson* v. *Johnson,* 110 Wis. 26.

If the insured is charged with knowledge of the statements contained in his policy, then what reason does the appellee give as to why he should recover. He does not claim fraud, or mistake, or that he was ignorant of a single principle which, under the law, he was to know, or that there was any undue advantage taken of him; but he comes into court, standing squarely on his contract, and says that under that contract he is entitled to recover, when he shows by his own testimony and by that of his family physician that he has not complied with the terms of the contract.

We ask the court to apply the principles of law enunciated to the contract contained in policy No. 795771, under which the appellee seeks to recover the sum of thirty dollars. Under section 3 of this policy, the court will find the following:

"Weekly benefits for sickness will only be paid when the insured has been confined strictly to his or her bed for seven consecutive days."

The testimony of Mr. King shows that he was not confined to his bed for seven consecutive days. The testimony of his physician, Dr. Johns, shows also that he was not confined to his bed for seven consecutive days, but, on the contrary, shows that he, on the advice of his physician, stayed out of bed intentionally. Now, under this clause in this contract, what right has the appellee to recover?

"As between general and specific provisions relating to the same subject-matter, the specific provisions will control." 25 Cyc. 741; *N. W. Mutual Life Ins. Co.* v.

*Hazlelett,* 105 Ind. 212; *Moore* v. *Lichtenberger,* 26 Pa. 268.

Here is a specific provision which says that the insured is only entitled to weekly benefits for sickness when the insured has been confined strictly to his or her bed for seven consecutive days. This is a plain, intelligent, unambiguous clause and the appellee cannot recover according to its terms.

*Thos. J. Johnston,* for appellee.

What was the contention of the parties when these two policies of insurance were taken out, and how are those intentions to be ascertained? By construing the words of a clause in each of the policies, literally as they are written, says the appellant. But the courts say, "that words shall be made subservient to the intent, not the intent subservient to the words." 19 Cyc. 657 (note 17).

Again it is said, "that the intention of the parties is to be gathered from the surrounding clauses and from all parts of the instrument." *Yeaton* v. *Fry,* supra.

Reading the surrounding clauses and all parts of the instrument, we find that policy No. 795771 provides that the premiums are paid, a part for life insurance, and a part for insurance against disability form sickness or accident. Policy No. 52254 is called a "special occupation policy," and provides that the premiums are paid for insurance against sickness which shall wholly and continuously disable the insured from performing every duty pertaining to his occupation, Then the object of the two policies was undoubtedly to insure appellee against disabling sickness; the policies say that is what the premiums were paid for; an indemnity against disability caused by sickness was the thing appellee intended to buy, and thought he was buying, when he paid the premiums. These policies were not written to cover confining sickness as counsel contends in his brief on

page 7, but sickness which was disabling. That clause of policy 795771 which provides that, "Weekly benefits for sickness will only be paid when the insured had been confined strictly to his or her bed for seven consecutive days, "and the clause in policy No. 25524, similar to the above, except it provided for continuous and necessary confinement to the house, is evidently intended and designed by the insurance company to show that illness sufficiently severe, ordinarily to confine a man to his bed for seven consecutive days, was contemplated and intended by the insurance company to be considered disabling, and as not intended as a condition precedent to appellee's right to recover. If appellee was sick enough to be confined to his bed for the time required, whether he was so confined or not, his sickness falls with the spirit of the policies, and he should be allowed his indemnity. We think the appellant in its brief on page 7 struck the keynote to the meaning and purpose of these clauses, when considered with all the other parts of the policies, when it says, "Before appellee has any right to recover, he must be sick enough to be confined to his bed for seven consecutive days."

A man may be sick enough to be confined to his bed, without being actually so confined. Such was the case of the appellee. The evidence undoubtedly shows that appellee was sick enough to be confined to his bed. He was actually in bed when his doctor called to see him, suffering from lumbago, a species of muscular rheumatism, so very painful his doctor stated, that the man who suffers therefrom frequently thinks he is going to die, and if the patient consulted his own feelings in the matter, he would undoubtedly remain in bed. Appellee and the physician both testify, that, as a part of the treatment the doctor insisted upon appellee's getting out of bed, and exercising all he could, that this was the way the physicians treated this disease. Appellee testified that he followed the doctor's advice, although as he ex-

pressed it, he found it very annoying to get up and move about, and that during the whole time for which he claims indemnity, he was wholly unable to do any work of any kind. There can be no question that appellee was disabled by such sickness, and that he was sick enough to be confined to his bed; but because he followed his doctor's advice, painful though it must have been to him, and in this way shortened the duration of his illness and the period for which the company would have to pay him indemnity, appellant complains and says, "It is true you were sick enough to be in bed, and that by following your doctor's advice you shortened the time for which we ought to pay you indemnity, and we require you to call in a doctor, but because you followed the course of treatment prescribed by him, and this necessitated your getting out of bed before the seven days were up, you cannot recover."

Why, appellant actually argues, in effect, on page 8 of its brief, that if appellee was so unfortunate as to get sick of a disease, the treatment of which would necessarily take him out of bed, he is not entitled to recover, because the policy states that he must be confined strictly to his bed. In other words, if appellee really expected to recover under his policies, he ought to be provident enough to select a disease to be sick of, which, under no circumstances would ever require him to leave his bed, even for treatment. If we understand the history of the disease of asthma, in its acute form, it disables a man from performing any kind of labor, or of exerting himself in any way, and at times it is very difficult to breathe while lying down, it is necessary to sit up in order to live. Appellant says under the circumstances it is alright for him to sit up, but he must sit up in bed; for if he sits up in a chair, "he has not been confined strictly to his bed," and he cannot recover.

To this end must this argument come if we follow appellant's contentions to a logical conclusion.

Appellant asks this court to make the ''intent subservient to the words, and not the words subservient to the intent.'' An absurd result will inevitably follow, when we attempt to construe a contract and ascertain the intention of the parties, by interpreting the language of one isolated clause, strictly and literally as it is written.

Applying the rule of construction laid down in *Yeaton* v. *Fry, supra,* and looking to the surrounding clauses. and all parts of the instrument, it is apparent that the object which appellee had when he took out these policies of insurance, was to protect himself from disability caused by sickness, sickness which incapacitated him from making a living for himself and family; and it is equally evident that this is what the insurer intended selling him. Then the words of these two clauses should be taken ''in that sense to which the apparent object and intention of the parties limit them,'' and the object and intention of the parties was to cover disabling sickness.

Then, if indemnity from disabling sickenss was the object appellee sought to secure in making these contracts of insurance, we ask this court to apply the rule laid down by May on Insurance, *supra,* and construe these contracts ''liberally in favor of the insured, so as not to defeat without plain necessity, his claim for indemnity, which, in making the contract it was his object to secure;'' for we fail to see any plain necessity for so construing these clauses as to defeat appellee's just claim for indemnity.

The supreme court of Maine, in the case of *McGlinchey* v. *Fidelity & Casualty Company,* 6 Am. St. Rep. 190, in passing upon a policy of insurance and the evidence supporting a claim for indemnity, say that the common sense view of the policies and the evidence to support appellee's claim for indemnity in this case, will inevitably lead to the conclusion that the policies covered disabling sickness, and that appellee was disabled by sickness, and being so disabled, he is clearly entitled to

the indemnity for which he recovered judgment in the lower court.

COOK, J., delivered the opinion of the court.

Appellee instituted suit in the justice court against appellant on two insurance policies which purport to indemnify him against illness. Policy No. 25,254 is called "special occupation policy," and policy No. 795,771 is called "policy of insurance covering life insurance combined with weekly indemnity for sickness and accident."

Appellee, plaintiff below, recovered judgment in the justice court upon both policies, and appellant appealed to the circuit court. On the trial in the circuit court, the trial judge, after hearing the evidence, charged the jury as follows: "The court charges the jury to find for plaintiff, and assesses his damages in the amount of fifteen dollars under policy No. 795,771, and the the amount of forty dollars under policy No. 25,254"—and this action is assigned for error in this court.

It will be observed that policy No. 25,254 is denominated by the company issuing the same as "special occupation policy," and, in order to determine the conditions of said policy, it is, of course, important to keep in mind for what purpose the policy was issued. Subdivision (e), so far as the same may relate to the question involved here, reads: "Or at the rate of ten dollars per week for the number of consecutive days, after the first seven, that the assured is necessarily and continuously confined within the house, and therein regularly visited by a legally qualified physician, by reason of illness," etc. Subdivision (k) is as follows: "In the event of disability, due to either accident or illness, resulting wholly or in part, directly or indirectly, from tuberculosis, rheumatism, . . . lumbago or in the event of any accidental injury otherwise covered by this policy resulting in hernia, then, and in all such cases referred

to in this paragraph, the limit of the company's liability shall be an indemnity for the period *disabled,* not exceeding four weeks at the rate which would otherwise be payable under this policy, anything herein to the contrary notwithstanding.''

Appellee was taken sick on the 6th day of October, 1909, with lumbago, and was unable to do anything until the 7th day of November, and was confined to his bed for a week, and then called in the doctor. The doctor upon his arrival advised the patient that it would be better for him to get up as much as possible, and exercise all he could, in order to shorten the duration of his attack. Acting upon his advice, plaintiff did, at intervals, get out of bed and attempt to take exercise, suffering pain and inconvenience in order to do so. The evidence also shows that the plaintiff sometimes went out of the room to the steps and into the yard.

The purpose of this policy was to indemnify appellee against loss of time in the occupation which he was following, and, while paragraph (e), taken alone, seems to make his confinement to his room continuously a condition precedent to his right of recovery, yet, red in connection with paragraph (k), it seems clear to us that the real test of his right of recovery depends upon whether he was disabled, during the time limit, to perform the duties required of him by his employment. It therefore follows that the trial court was right in directing the jury to find for forty dollars under this policy.

Policy No. 795,771 was not what is called an "occupation policy," and paragraph (3) of this policy, under the head "Conditions," says: "Weekly benefits for sickness will only be paid when the assured has been confined strictly to his or her bed for seven consecutive days.''

The evidence shows that he was confined to his bed for seven consecutive days, and we find no provision in this policy which excludes the first week of sickness from the

benefits of the indemnity. The trial court was correct in its construction of this policy, and the peremptory instruction to the jury to find for the plaintiff under same was correct.

*Affirmed.*