CHARLES S. REED, APPELLEE, v. NEW YORK LIFE INSURANCE COMPANY, APPELLANT.

FILED JUNE 26, 1936. No. 29643.

*Brown, Fitch & West,* for appellant.

*Reed, Ramacciotti & Robinson* and *R. L. Hrushka,* contra.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

This is an action to compel the payment of certain "total and permanent disability" benefits under two insurance policies issued by defendant, under which plaintiff was insured. From a judgment for plaintiff, the defendant appeals.

The two insurance policies in suit each insure the plaintiff to the extent of $2,000, with double indemnity in case of accidental death. The policies are in full force and effect. Each policy on its face provides, in addition to the ordinary provisions contained in a life insurance policy: "And upon receipt of due proof that the insured

is totally and presumably permanently disabled before age sixty, as defined under 'Total and Permanent Disability,' the company agrees to pay to the insured $20 each month, and to waive payment of premiums, as provided therein."

Plaintiff, it appears, was born on June 4, 1896.

On the second page of each policy, under the head of "Total and Permanent Disability," appear the following provisions:

"Disability shall be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under this policy took effect and before the anniversary of the policy on which the insured's age at nearest birthday is sixty.

"Upon receipt at the company's home office, before default in payment of premium, of due proof that the insured is totally disabled as above defined, and will be continuously so disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been, totally disabled as above defined, the following benefits will be granted:

"(a) Waiver of Premium. The company will waive the payment of any premium falling due during the period of continuous total disability, the premium waived to be the annual, semiannual or quarterly premium according to the mode of payment in effect when disability occurred.

"(b) Income Payments. The company will pay to the insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this policy) for each completed month from the commencement of and during the period of continuous total disability. If disability results from insanity, payment will be made to the beneficiary in lieu of the insured.

"In event of default in payment of premium after the insured has become totally disabled as above defined, the policy will be restored and the benefits shall be the same as if said default had not occurred, provided due proof that the insured is and has been continuously from date of default so totally disabled and that such disability will continue for life or has continued for a period of not less than three consecutive months, is received by the company not later than six months after said default.

"The total and irrecoverable loss of the sight of both eyes or of the use of both hands or of both feet or of one hand and one foot shall constitute total disability for life.

"Before making any income payment or waiving any premium, the company may demand due proof of the continuance of total disability, but such proof will not be required oftener than once a year after such disability has continued for two full years. Upon failure to furnish such proof, or if the insured performs any work, or follows any occupation, or engages in any business for remuneration or profit, no further income payments shall be made nor premiums waived."

The evidence discloses, without dispute, that the plaintiff was taken ill on March 4, 1933, and thereafter remained under the constant and continued care of his physician until July 9, 1933. He was first able to work part time on June 20, 1933. With reference to his actual condition, his physician testifies:

"Q. During the period from the first date that you have given, and until the time that you say he returned to work, do you personally know whether or not he was, during said period, totally disabled? A. I would say for carrying on any particular work he would be totally disabled during that period of time, he was still confined to his home and practically bedridden the latter part of May, and came in a few times the first two or three weeks in June, but it was at my advice he did not return to his regular employment until he regained his strength and normal activities."

Plaintiff's first demand for payment of total and permanent disability benefits was orally made in July, 1933. He testifies:

"Early in July, after Dr. Best had told me he thought I was going to be all right, * * * I called Mr. Forbes (cashier of defendant company in Omaha) and I told him I thought that my total disability had stopped, and I wanted him to send me the blanks upon which to make claim on my insurance."

These blanks were not sent to plaintiff, and on July 27, 1933, the request was repeated by him in writing. This letter was answered by the home office, under date of August 9, 1933, to the effect, viz.:

"Under the terms of your above numbered policies, disability benefits become effective upon receipt at the company's home office of due proof that the insured *is* totally and permanently disabled, as provided.

"Inasmuch as it is evident from your conversation with Mr. Forbes that you were no longer totally disabled, you will appreciate that the company cannot consider that you are totally and permanently disabled within the meaning of the policies and consequently cannot favorably consider claim."

Thus, the decisive question in this case is whether or not the plaintiff is entitled to recover as "totally and permanently" disabled, under the definition of the policies issued to him. No notice in writing was ever served on the insurer by the insured, as stipulated in the policies, nor was any attempt made to comply with this provision as to notice until plaintiff had ceased to be totally disabled. The language of the policy relating to the subject of total and permanent disability, which we have quoted, is clear. We find no ambiguities therein. Under such circumstances, "Contracts of life insurance, like other contracts, must be construed according to the terms that the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense." *Bergholm v. Peoria Life Ins. Co.*, 284 U. S. 489.

The indemnity provisions here under consideration are, in express terms, limited to "total and permanent disability." They are not policies insuring against "temporary total disability." True, to enable the assured to secure full measure of protection intended to be afforded, these insurance contracts provide that, in effect, where for more than three consecutive months immediately preceding receipt of proof assured has been totally disabled, and the proof submitted is not conclusive as to the permanency of such disability, he will be paid indemnity as permanently disabled until the situation is cleared up and, by proof, the actual facts are made to appear. These provisions were manifestly for the benefit of the assured. They enabled him to establish a presumptive total and permanent disability, when otherwise his proof would be inconclusive and subject to question. Their purpose was not to increase the contractual liability of the insurer to cover "temporary total disability." In essence, if not in form, the peculiar provisions now under consideration are tantamount to a stipulation as to the weight of certain evidence or proof, to be efficacious only until the real facts are established.

It follows, in the instant case, that, when plaintiff first made application for disability benefits, the proof established that, while for a period of time he had been temporarily totally disabled, he never was actually totally and permanently disabled, nor, at the time of the commencement of this action, was he entitled to a recovery on that basis.

We are strengthened in this conclusion by the terms of the last paragraph in the policies devoted to the subject of "total and permanent disability," hereinbefore quoted, and which we now repeat, viz.: "Before making any income payment or waiving any premium, the company may demand *due proof of the continuance of total disability.*" (Italics ours.)

In *Bergholm v. Peoria Life Ins. Co.,* 284 U. S. 489, 491, wherein the assured never recovered but departed this life while still disabled, the supreme court of the United

States, in construing a similar "income disability clause" to the one presented in the instant case, said, in part:

"Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of *proof* of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums *becoming due after the receipt of such proof*. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy. Compare *Brams v. New York Life Ins. Co.,* 299 Pa. St. 11, 14, 148 Atl. 855. It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. *Mutual Life Ins. Co. v. Hurni Packing Co.,* 263 U. S. 167, 174; *Stipcich v. Metropolitan Life Ins. Co.,* 277 U. S. 311, 322. This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings."

In *Rose v. New York Life Ins. Co.,* 127 Ohio St. 265, 187 N. E. 859, the supreme court of Ohio had for consideration the identical disability provisions which are embraced in the policies in the instant suit, with circumstances practically the same as presented in our present record. The discussion of that court is, therefore, illuminating as applied to the instant case. The following appears on pages 271, 272 and 273 of the *Rose* case:

"The other and more fundamental point upon which plaintiff insists is that the language of the new disability clause is subject to a construction which would allow him to recover. Referring to the clauses of the new contract, quoted *supra,* he says that, if proof of loss had been made during the period of disability, the company would have paid the benefits accruing from the beginning of that period to its end. Arguing from this premise, he contends

that the true import of the contract is 'health insurance' rather than insurance against total and permanent disability. In support of this contention, he claims that the language of the disability contract is ambiguous; that, unless it means what he says it means, the additional premium which he paid for the new 'riders' on the old policies was exacted for no adequate, additional benefit; and that, in selling the new contract, agents of the company passed out company literature which tended to corroborate his claim.

"The following language of the policy he contends is ambiguous: 'Or if the proof. submitted is not conclusive as to the permanency of such disability, but establishes that the insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been, totally disabled, as above defined, the following benefits will be granted.'

"The requirement of proof which establishes that the insured 'is' disabled would seem upon its face to necessitate the submission of such proof during the continuance of the disability, but the plaintiff contends that the succeeding words, 'immediately preceding receipt. of proof has been totally disabled,' imply that proof may be filed within a reasonable time after the disability has ceased. Considering the contract as a whole, however, there is no ambiguity unless an assumption is first made that the agreement is one to pay for temporary disability. But we may not read a meaning into the clear language of the contract and then find ambiguity in the words which deny that meaning.

"Indeed, plaintiff's case rests wholly upon the theory that the policy provides payments for temporary disability, since a disability ended before proof of it is made must of necessity be temporary.

"When, however, we turn to the language of the disability contract, we find in large type at its beginning the words, 'Total and Permanent Disability.' Thereafter the agreement provides for the payment of monthly income

and the waiver of premiums upon proof that the insured is totally and *presumably* permanently disabled. The contract definition of total disability includes the loss of both hands, both feet, both eyes, or of one hand and one foot. But bodily injury or disease, incapacitating the insured for any work or occupation or business for remuneration or profit, is also within the definition.

"Now, of course, total disability appears forthwith upon proof of the loss of both hands, but in many cases total incapacity for work or business could only be *known* to be permanent after the person concerned was dead. It was therefore necessary, as a matter of practice, that the policy establish some criterion. upon which a presumption of permanent disability might be based, so as to enable the payment of benefits during the insured's life.

"The contract accordingly provides for proof of permanent disability in two classes of cases: (a) That class in which the insured is and will be continuously disabled for life, for example, having both hands cut off; and (b) that class in which 'the proof submitted is not conclusive as to the permanency of such disability,' but in which there is a presumption of permanency, that is, in which the proof 'establishes that the insured is and for a period of not less than three consecutive months immediately preceding receipt of proof has been totally disabled.'

"If the presumptively permanent disability cease after payments begin, the contract provides for their discontinuance. If the cessation of disability be shown before the payments begin, plainly no payments need be made.

"Thus analyzed, the language used becomes wholly clear and entirely free from ambiguity."

In *Wetherall v. Equitable Life Assurance Society*, 273, Mich. 580, 263 N. W. 745, a case involving an insurance policy containing provisions for disability benefits for total and permanent disability, and on many points identical with the provisions here in suit, and where a plaintiff brought an action to recover monthly compensation during the full period of disability, after he had recovered from his total

disability, the Michigan supreme court announced the rule:

"Insured, though totally disabled for many months, *held* not entitled to recover, where disability was neither total nor permanent when he claimed benefits under policy raising presumption of permanence after three months' disability."

See, also, *Gottlieb v. New York Life Ins. Co.*, 136 Misc. Rep. 194, 240 N. Y. Supp. 568; *Jones v. New York Life Ins. Co.*, 158 Wash. 12, 290 Pac. 333.

The conclusion follows, in the instant case, that inasmuch as the evidence discloses, without doubt, that assured was not totally and permanently disabled when demand was first made upon the insurance company for benefits, and when action was first instituted on his claim, no recovery may be sustained in his behalf. Thus, the trial court erred in the entry of judgment herein and in overruling appellant's motion for a new trial.

Therefore, the judgment of the district court is reversed, and the action dismissed.

REVERSED AND DISMISSED.