## NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY *v.* JOHN E. HURST

[No. 31, April Term, 1938.]

598

*Decided June 13th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Jacob S. New* and *W. Conwell Smith,* with whom was *George Hoague* on the brief, for the appellant.

*William D. Macmillan* and *Lawrence Perin,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The New England Mutual Life Insurance Company issued on February 16th, 1916, an insurance policy on the life of John E. Hurst of W. in the amount of $20,000, which was made payable on death to designated beneficiaries. Attached to this policy, and issued in consideration of the payment of additional premiums and of the application by the assured, was a supplemental agreement. Omitting some immaterial formal parts, the agreement is of this form:

"New England Mutual Life Insurance Company
"Boston, Massachusetts.

"Supplemental Agreement for Income and Waiver of Premiums During Total and Permanent Disability, and for Double Indemnity in Case of Death from Accident.

"Last extra premium of $379.00 due August 28, 1935.

"In consideration of * * * the New England Mutual Life Insurance Company issues this Supplemental Agreement to be attached to and made a part of its Policy No. 305,847 upon the life of John Edward Hurst of W.

"Income and Waiver of Premiums During Total and Permanent Disability.

"Upon receipt of due proof that Insured has become physically or mentally incapacitated so as to be wholly and permanently unable to engage in any occupation or profession or to perform any work whatsoever for compensation, gain, or profit, and that such disability has occurred while the Policy and this Agreement are in full force and prior to the policy anniversary nearest his sixty-fifth birthday, and has existed for a period of ninety days, the Company will pay to the Insured a Monthly Income of Two Hundred Dollars and will also waive the payment of every premium thereafter due upon the Policy and this Agreement, subject to the conditions herein set forth.

"The total and irrecoverable loss of the sight of both eyes, or the severance of both hands at or above the

wrists, or if both feet at or above the ankles, or of one entire hand and one entire foot, shall be considered total and permanent disability. * * *

"The Company shall have the right at any time or times during the first year after receipt of proof of such disability, and thereafter not oftener than once a year, to require satisfactory proof of the continuance of total disability. Upon failure to furnish such proof, or if it shall appear at any time that the Insured is no longer totally and permanently disabled, this Agreement shall terminate, no further income will be paid nor premium waived, and all premiums thereafter due under the Policy shall be payable in conformity with its terms.

"This provision shall terminate if and when the Insured shall engage in military or naval service in time of war, or in any work in connection with actual warfare, and shall not be effective if the disability of the Insured shall result from self-inflicted injury or from any aerial or submarine casualty."

A similar policy and supplemental agreement were issued on March 22nd, 1916, for smaller amounts by the same assurer to the assured.

On February 4th, 1937, the assured brought an action at law against the assurer to recover, for the period which began with April 11th, 1936, and ended with November 20th, 1936, the disability benefits promised by both policies. The defendant filed the general issue pleas, and issues were joined and the trial was had before a jury. A verdict was returned for the amount of the monthly income for the five months which ended in September, and the appeal is taken from the judgment entered against the defendant on the verdict. There are no questions on the rulings on the admissibility of testimony; and the single exception is to the action of the court on the prayers. The six prayers offered by the plaintiff were granted. The third prayer of the defendant instructed the jury in reference to the burden of proof. It was granted, but the other nine prayers of the defendant and its special exceptions to the granting of

plaintiff's first, second, fourth and sixth prayers were rejected on the grounds that the first three were a correct statement of the law and that the sixth prayer was a proper statement of the measure of damages—in that the computation of income was fixed at the date of the beginning of disability instead of the day of the defendant's receipt of proof of loss. The questions raised by the granted and rejected prayers do not involve matters of practice or of compliance with the formal requirements of recovery, but present the fundamental differences of the parties with reference to the proper construction of the contract in application to the disability of the plaintiff.

The testimony on the record tends to show that some years after the writing of the policies of insurance the plaintiff began to drink, immoderately, intoxicating liquor. The habit continued until he became a dipsomaniac. From 1934 until April 11th, 1936, his condition became progressively worse, notwithstanding medical care and attention, and restraint and the treatment of specialists in sanitariums. On April 5th, 1936, he became dangerously ill of chronic alcoholism. Medical attention was required, and he was confined to his home, and kept in bed so far as was possible for his attendants to enforce. After a slight improvement he became worse, and he was sent, on May 19th, to a local hospital for restraint and hospitalization. He remained there until June 25th, when he was taken to his home in the care of a special nurse and there received medical attention until July 9th, when, notwithstanding all precautions, he resumed his drinking and his condition became so grave that he was then removed to a sanitarium in North Carolina, to remain there until the nervous changes of defective will, judgment, memory and general moral fibre should be restored sufficiently, if this were possible, to enable him to be released.

The plaintiff remained continuously in the sanitarium until November 20th, 1936, when he left and returned to his home. He went to work within a week as a salesman for bond and stock brokers, and the testimony is that

he was so employed without break, except that from August 30th, 1937, until September 11th, he was in the hospital to be treated for chronic alcoholism.

As was expressed by the distinguished doctors who attended the plaintiff, chronic alcoholism is a disease which results after the continued abuse of drinking alcoholic liquor gives rise to an uncontrolled craving or desire which is accompanied by the lack of judgment, will power, and moral fibre on the part of the victim to combat the craving. The diagnosis was that the plaintiff was afflicted with this disease, and its coincident secondary physical, nervous and mental effects; and the prognosis was that he would not recover.

There is further testimony from which, if believed, the jury might find that, during the whole period embraced by his claim, he was thus physically or mentally, and at times both physically and mentally, continuously incapacitated, so as to be wholly unable to engage in any occupation or profession or to perform any work whatsoever for compensation, gain, or profit; and further that, at the beginning of this period, his disability was of such a nature that it was reasonably certain that it would continue without abatement or cessation; and that such disability did continue for a period of more than ninety consecutive days next ensuing the 11th of April, 1936.

Other proof tended to establish that the disability of April 11th, 1936, had existed for a period of ninety days when the assurer was notified on July 29th, 1936, that a disability claim would be made, and was requested to supply the plaintiff with the requisite forms. The assurer furnished the forms, which were filled in by the attending physicians, and received by the assurer on September 21st. On September 28th, 1936, the medical director of the company disapproved the payment of the claim.

Upon this testimony and the construction of the policy to the effect that the condition for the payment of income that the assured "has become physically or mentally incapacitated so as to be wholly and permanently unable to engage in any occupation or profession or to perform

any work whatsoever for compensation, gain or profit" contemplates such a disability which exists for a period of ninety days, and is of such a nature that its duration is such as to be reasonably certain that the disability would continue for an indefinite and indeterminable time, the court at *nisi prius* submitted the case to the jury. If the construction of the policy be sound, the action of the court was right.

After November 20th, the total and permanent nature of the disability ended. So, the disability did not exist when the action on the policies was brought on February 4th, 1937. In fact, the plaintiff had been gainfully employed since within a week after November 20th, and he does not assert a right of recovery for any other than the period for which the action is brought. Thus the principal question is whether a total and permanent disability must subsist continuously in time from its beginning until the expiration of the term of assurance, so that, if action be brought, a recovery may not be had unless the testimony prove the total and permanent disability until the time of suit brought, and the certainty of the continuation of such disability until the coverage of the insurance policy terminates. The insurance company contends that the correct answer is in the affirmative, which is the opposite of the conclusion reached by the trial court. In the solution of the problem the rule which prevails in this jurisdiction is not that the policy of insurance is to be resolved more strongly against the insurer, but that the insurance contract is to be construed, without any predisposition toward either contractual party, so as to give effect to the intention of the parties, in accordance with the ordinary and usually accepted meaning of the language used, when considered in connection with the subject matter and the canons which are applicable in the construction of a written contract. If the language be without ambiguity, the court must give it effect notwithstanding an apparent hardship, since the parties have so chosen to agree. *Frontier Mtge. Corp. v. Heft,* 146 Md. 1, 12, 125 A. 772; *Brown-*

*stein v. New York Life Ins. Co.,* 158 Md. 51, 148 A. 273;
*Landwehr v. Continental Life Ins. Co.,* 159 Md. 207, 210,
211, 150 A. 732; *American Casualty Co. v. Purcella,* 163
Md. 434, 436, 437, 163 A. 870.

As a corollary to this rule is the complementary one
to the effect that should there exist doubt as to the con-
struction of an instrument drawn by one party upon the
faith of which the other has incurred obligations, that
construction should be adopted which will be favorable
to the latter party. So, in contracts where the assurer
prepares the contract with particular reference to the
conditions and scope of the insurance, the accepted rule
is to resolve any doubt or ambiguity in favor of the
assured. *McEvoy v. Security Fire Ins. Co.,* 110 Md. 275,
73 A. 157.

With these rules of construction in mind, the contract
must be read as a single document, whose meaning must
be gathered from all its associated parts when assembled
as the unitary expression of the agreement of the parties.
The difficulty of construction arises from the fact that
the intention of the parties depends largely upon the
sense in which "permanently" is used in the supplemental
agreement. "Permanent" is a relative term. Thus the
permanent situs of taxable personal property may not
mean the continued and unchangeable location of the
property at a given place, but would indicate a location
which was not of a temporary or fleeting character.
*Gromer v. Standard Dredging Co.,* 224 U. S. 362, 377,
32 S. Ct. 499, 505, 56 L. Ed. 801 (dissenting opinion) ;
*Hopkins v. Baker,* 78 Md. 363, 370-374, 28 A. 284; *Hooper
v. Baltimore,* 12 Md. 464; *Philadelphia, W. & B. R. Co.
v. Appeal Tax Court,* 50 Md. 397. So, a permanent abode
has .been defined to be a home or domicile which one is
free to leave as interest or pleasure may suggest, but
which he has no present intention of changing. *Moffett
v. Hill,* 131 Ill. 239, 22 N. E. 821, 823. Again, permanent
employment in a contract has a signification which is
determined by the subject matter, the circumstances,
and the relation of the parties when considered in con-

nection with the terms of the contract. It does not mean employment for life or for any definite number of years. *Carnig v. Carr,* 167 Mass. 544, 547, 46 N. E. 117; *Sullivan v. Detroit etc. R. Co.,* 135 Mich. 661, 671, 98 N. W. 756, 760; *Elderton v. Emmens,* 4 C. B. 479 493, 496, 136 Eng. Reprint 594; *Perry v. Wheeler,* 12 Bush 541, 75 Ky. 541, 548. So, an injury to land may be permanent, though not continuing forever. It is said that for the injury to be permanent it must be lasting as contradistinguished from a mere temporary inconvenience. *Bassett v. Johnson,* 2 N. J. Eq. 154, 162; *Beaufort v. Crawshay,* L. R. 1 C. P. 699, 713, 714; *New York Life Ins. Co. v. McLean,* 218 Ala. 401, 118 So. 753, 754.

The relative quality of the term has given rise to difficulties in the construction of insurance policies, as is well illustrated by the pending appeal, and numerous decisions of the courts of last resort of other jurisdictions.

To determine the signification of the term in the policies at bar, it is necessary to analyze the contract and consider its provisions. In consideration of the performance by the assured of his undertakings, the assurer agrees to pay the assured a monthly income of a specified amount, and to waive the payment of every premium thereafter due upon the policy and the supplemental agreement upon receipt of due proof that the assured has become physically or mentally incapacitated so as to be wholly and permanently unable to engage in any occupation or profession or to perform any work whatsoever for compensation, gain or profit and that such disability has existed for a period of ninety days, subject to the conditions:

(a) That even though the assured be not in fact wholly and permanently incapacitated, the total and irrecoverable loss of the sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot, shall be considered total and permanent disability;

(b) That the Company shall have the right at any

time or times during the first year after receipt of proof of such disability, and thereafter not oftener than once a year, to require satisfactory proof of the continuance of total disability;

(c) That upon failure to furnish such proof, or if it shall appear at any time that the insured is no longer totally and permanently disabled, the supplemental agreement shall terminate and no further income will be paid nor premium waived;

(d) That all premiums thereafter due under the life insurance policy shall be payable in conformity with its terms:

(e) That the supplemental agreement shall not be effective if the disability shall result from self-inflicted injury or from any aerial or submarine casualty.

Thus, although the period of prescribed disability has existed for a period of ninety days, and the assurer has recognized its obligation and has been paying monthly the specified income and waived all premiums, the correlative rights of the assurer to pay, and the assured to receive, the income every month are not permanent in the sense they cannot end. The continuation of the payment and of the receipt of the monthly income depend progressively in time upon the future continuation of the subsisting period of current disability. So long as the disability persists, the assurer must pay, but so soon as the disability ends the income of the assured ceases. Moreover, in the first year after the obligation occurs, the assured may require at any time, and as often as it desires, proof of the continuance of the disability. In the second and subsequent years the requirement may be enforced but once annually. The words of the contract in this connection are, "Upon failure to furnish such proof, or if it shall appear at any time that the Insured is no longer totally and permanently disabled, this Agreement shall terminate, no further income will be paid nor premium waived." The parties to the contract, by their express stipulations with reference to such a contingency, contemplated the probability that the physical

or mental incapacity of the assured might end after the assured had rightly received consecutive payments of income under the agreement, during a period in which it was not reasonably anticipated that the assured's requisite disability would end at an appreciable time. Thus, by the clear import of the provisions of the contract, the phrase "permanently unable" did not mean, when read in connection with the context, that the disability of the assured must endure until his death. It is evident that if, by way of illustration, an assured become wholly incapacitated by insanity, and so remain in that state for a period of ninety days, without, so far as could be anticipated, any reasonable prospect of recovery, the assured would become entitled to the payment of the monthly income as it accrued due so long as his incapacity continued. If the assurer paid the income, it simply fulfilled its promise. If it failed or declined to pay, the liability to pay remained, and an action for the recovery of the amount of the income would lie. Should the assured become sane and his capacity for professional or other work be regained, a contingency has arisen within the purview of the contract which provides for such a situation in express terms: "this Agreement shall terminate, no further income will be paid nor premium waived."

While thus relieved of the obligation to pay any "further income", the assurer, in the contingency assumed that it had paid to the assured the income which had accrued due monthly during the period of total incapacity, would not have any right to recover such payments of the assured. On the other hand, if the assurer had defaulted in the payment to the assured of all or any of the monthly payments of income during such period of total incapacity, the breach of its contract would not better the position of the assurer, but it would remain liable to pay the assured the amount of such defaults in payment, although the assured had ceased to be incapacitated after such defaults. In short, the rights and obligations which were created by the execution of the

contract and which existed between the assured and the assurer before and at the time the assured's disability ended, are not discharged by non-performance and a delay in time short of that within the statute of limitations. A promisor is not relieved of a breach in the performance of past due several obligations because he has no later promise to perform. Nor is it material when an action is brought, if not barred by some limitation imposed by the instrument or by statute, since the rights and obligations of the parties are determined by the contracts of insurance, and not by whether the action is deferred until total disability has ceased.

The nature of the contract and the context lead the court to the conclusion that the word "permanently" was used in its relative signification of not being temporary but lasting indefinitely, so that the disability meant was the defined condition or state which would continue indefinitely without change and without reasonable grounds to anticipate an appreciable termination. As thus construed, there was legally sufficient testimony from which it could be found that the plaintiff was, during the period claimed, within the purview of the insurance policies and, so, the case was for the jury on the issue of the permanent and total disability within the contemplation of the policies of insurance.

The view here taken is supported by the decisions of other appellate tribunals which have construed similar provisions of insurance policies. See *Garden v. New England Mut. Life Ins. Co.*, 218 Iowa 1094, 254 N. W. 287; *Kurth v. Continental Life Ins. Co.*, 211 Iowa 736, 234 N. W. 201; *Penn Mut. Life Ins. Co. v. Milton*, 160 Ga. 168, 127 S. E. 140; *Adamson v. Metropolitan etc. Co.*, 42 Ga. App. 587, 157 S. E. 104; *New England Mutual Life Ins. Co. v. Durre*, 101 Ind. App. 467, 199 N. E. 868; *Bahneman v. Prudential Ins. Co.*, 193 Minn. 26, 257 N. W. 514; *Maze v. Equitable Life Ins. Co.*, 188 Minn. 139, 246 N. W. 737; *Laupeheimer v. Massachusetts etc. Co.*, 224 Mo. App. 1018, 24 S. W. 2nd 1058; *Equitable Life Ins. Co. v. Gerwick*, 50 Ohio 277, 197 N. E. 923; *Losnecki*

*v. Mutual Life Ins. Co.,* 106 Pa. Super. 259, 161 A. 434;
*Janney v. Scranton Life Ins. Co.,* 315 Pa. 200, 173 A. 819;
*Equitable Life Assur. Soc. v. Serio,* 155 Miss. 515, 124 So.
485; *McCutchen v. Pacific Mutual etc. Co.,* 153 S. C. 401,
151 S. E. 67; *Plummer v. Metropolitan Life Ins. Co.,* 132
Me. 220, 169 A. 302; *Bagnall v. Travelers' Ins. Co.,* 111
Cal. App. 714, 296 P. 106; *Couch, Cyclopedia of Insurance Law.* vol. 7, secs. 1672-1673.

Since the policies require the existence of the prescribed disability to endure for a periof of ninety days
before the claim of the assured may be entertained, if,
at the end of these days, the assured is wholly and permanently incapacitated, the assurer is obliged to begin
forthwith to pay the agreed income. The continuation
of the required disability for this selected period, with
relevant evidence reasonably to establish that it will not
be of temporary duration, is a test of the permanency
exacted, because the assurer reserves the right to prove
that the disability does not continue. Furthermore, it
retains the right periodically "to require satisfactory
proof of the continuance of total disability." The disability must exist for it either to continue or to fail to
continue. With like effect, the assurer wrote in the
policies in the future tense: "if it *shall* appear *at any
time* that the Insured is *no longer* totally and permanently disabled, this Agreement shall terminate, no
*further* income *will* be paid." The italics here used
mark the ruling words. The provision that no *further*
income *will* be paid if the assured is *no longer* permanently disabled, irrefutably demonstrates that a precedent, determinable stage of indefinite length of total
disability, during which the assured should have a right
to receive, and the assurer the contractual liability to pay,
the stipulated monthly income and to waive the premiums of the assured, is a permanent disability within the
spirit and letter of the contract. So, the policies fix
when and how the right of the assured begins and when
it may end. At the beginning of this monthly income
until its end, the rights of the assured to income obtain.

That the right should come to an end by the termination of the disability, does not curtail the past rights and obligations of the parties, which abide intact, although the assurer is no longer bound to pay *future* income. To hold that the different facts and circumstances which later arose to terminate the liability will relieve the assurer of his breach of contract in failing to pay the monthly income under other facts and circumstances which, at an earlier period of the term of the contract, gave the assured a right to the income, is to confound a present non-liability with a past liability, and to treat as identical the beginning of the liability of the assured with its termination.

The objects of the assurance, the natural meaning and logical effect of the language of the policies in giving expression to the intention of the contractants, and the weight of the reasonable result attained by the construction given, prevent this tribunal from the adoption of the decision in *Ginell v. Prudential Insurance Company*, 237 N. Y. 554, 143 N. E. 740, which comes to a different conclusion than that here expressed, and is followed by a number of cases in other esteemed appellate courts. It seems, nevertheless, to be the sounder view that the parties neither intended, nor by construction employed terms to express the intention that, in relieving the assurance carrier of its promise to pay future income upon the termination of the contemplated period of total disability, the assured would thereby be denied the right of enforcing any liability on the part of the assurer to pay the income which had accrued due at the time when the period of such total disability came to its end.

An answer to the decisions which are relied upon by the defendant corporation would seem to be furnished by the terms of the particular policies under review. Of primary significance is the consideration that the fundamental purpose of the contract of assurance is to provide, from month to month during the period of total incapacity of the assured, financial support to sustain him and his dependents. Thus the paramount object of the policy

would be defeated, if to the term "permanently" would be attributed the absolute meaning that the disability must endure until the death of the assured, since that condition for disability to be permanent usually may not be in fact determined until the death should occur. Thus the income would not be payable monthly as designed, but would accumulate until death, unless the assured suffer such a loss of sight or physical injury to his hands and feet as are specifically declared by the policy to constitute a total and permanent disability.

The language of the policy, however, precludes the construction that the assured must await his own death to have determined his right to the enjoyment of a monthly income during his life. Thus the policy provides specifically for a time at which the payments of the monthly income may begin, and, having so begun because of due proof of the existence of the prescribed permanent disability, the policy further provides specifically how, during the lifetime of the assured, and wholly independently of the time of his death, the regular payments of income being made to the assured shall come to an end by the termination of the assured's period of permanent disability. So, demonstrably, between the beginning and the end of the payments of income, or of the accrual of the right to the income and of the cessation of that right, should there be default on the part of the insurance carrier, there is, by force of the express terms of the policy, an intervening time of permanent disability within the scope and meaning of the policy whereby the parties have given form to their contract. Any other construction ignores that the contracts of insurance were prepared with reference to the obvious fact that persons who become physically or mentally incapacitated so as to be in a state of total disability are not always incurable, although that may be the rational diagnosis and prognosis, in cases of disease of mind or body, or the apparently everlasting result of an injury or condition. The policies under construction, therefore, anticipated the probabalities of change in the course

of the lives of the assured; and were drawn so as to meet such contingencies. The construction given does not impose any other liability than to pay "during total and permanent disability", and this not only gratifies every intendment of the contract but also fulfils the promise of the bold lettering of the captions of the Supplemental Agreement.

The defendant admits that a number of decisions hold that where the disability continues to the time of the action and its future duration is uncertain or indefinite, but lasting, the right of recovery may not be denied as a matter of law, and the question of permanence is one to be decided by the jury. *Prudential Ins. Co. v. Brookman,* 167 Md. 616, 175 A. 838; *Aetna Life Ins. Co. v. Spencer,* 182 Ark. 496, 32 S. W. 2nd 310; *Prudential Ins. Co. v. Litzke,* 6 W. W. Harr. (Del.) 592, 179 A. 492; *Kurth v. Continental Life,* 211 Iowa 736, 234 N. W. 201; *Garden v. New England Mutual Life,* 218 Iowa 1094, 254 N. W. 287. Compare *Hawkins v. John Hancock etc. Co.,* 205 Iowa 760, 218 N. W. 313; *Graham v. Equitable Life Assur. Soc.,* 221 Iowa 748, 266 N. W. 820; *Plummer v. Metropolitan Life Ins. Co.,* 132 Me. 220, 169 A. 302; *Maze v. Equitable Life Ins. Co.,* 188 Minn. 139, 149, 246 N. W. 737; *Carson v. New York Life Ins. Co.,* 162 Minn. 458; 203 N. W. 209; *Equitable Life Assur. Soc. v. Serio,* 155 Miss. 515, 518, 519, 124 So. 485; *New York Life Ins. Co. v. Bain,* 169 Miss. 271, 152 So. 845; *Bubany v. New York Life Ins. Co.,* 39 N. M. 560, 51 P. 2nd 864; *Wenstrom v. Aetna Life Ins. Co.,* 55 N. D. 647, 215 N. W. 93; *Ralston v. Metropolitan Life Ins. Co.,* 90 Utah 496, 62 P. 2nd 1119.

The defendant urges, however, that if the disability has ended, at the time of the institution of the action, through the recovery or cure of the assured, there can be no recovery for the previous disability under a policy of the form now under consideration. A great number of decisions are cited in support of this contention. *Metropolitan Life Ins. Co. v. Blue,* 222 Ala. 665, 133 So. 707; *Plunkett v. Metropolitan Life Ins. Co.,* 192 Ark. 1065,

95 S. W. 2nd 1144; *Job v. Equitable Life Ins. Co.*, 133 Cal. App. Supp. 791, 22 P. 2nd 607; *Steffan v. Bankers Life Co.*, 267 Ill. App. 248; *Hawkins v. John Hancock Life Ins. Co.*, 205 Iowa 760, 218 N. W. 313; *Graham v. Equitable Life Ins. Co.*, 221 Iowa 748, 266 N. W. 820; *Maresh v. Peoria Life Ins. Co.*, 133 Kan. 654, 3 P. 2nd 634; *Lewis v. Metropolitan Life* (La. App), 142 So. 262; *Brod v. Detroit Life Ins. Co.*, 253 Mich. 545, 235 N. W. 248; *Wetherall v. Equitable Life Ins. Co.*, 273 Mich. 580, 263 N. W. 745; *Paul v. Missouri State Life Ins. Co.*, 228 Mo. App. 124, 52 S. W. 2nd 437; *Reed v. New York Life*, 131 Neb. 330, 268 N. W. 290; *Turcotte v. Prudential Ins. Co.*, 87 N. H. 440, 182 A. 9; *Gusaeff v. John Hancock Mut. Life. Ins. Co.*, 118 N. J. L. 364, 192 A. 528; *Ginell v. Prudential Ins. Co.*, 237 N. Y. 554, 143 N. E. 740, reversing 205 App. Div. 494, 200 N. Y. S. 261; *Mitchell v. Equitable Life Assur. Soc.*, 205 N. C. 721, 172 S. E. 495; *Read v. Metropolitan Life Ins. Co.*, 206 N. C. 458, 174 S. E. 307; *Lee v. Equitable Life Assur. Soc.*, 211 N. C. 182, 189 S. E. 626; *Thigpen v. Jefferson Standard Life Ins. Co.*, 204 N. C. 551, 168 S. E. 845; *Rose v. New York Life Ins. Co.*, 127 Ohio St. 265, 187 N. E. 859; *New York Life Ins. Co. v. Riggins*, 178 Okl. 36, 61 P. 2nd 543; *Lyford v. New England Mutual Life Ins. Co.*, 122 Pa. Super. 16, 184 A. 469; *Grenon v. Metropolitan Life Ins. Co.*, 52 R. I. 453, 161 A. 229; *Conley v. Pacific Mutual Life Ins. Co.*, 8 Tenn. App. 405; *Metropolitan Life Ins. Co. v. Noe*, 161 Tenn. 335, 31 S. W. 2nd 690; *Home Benefit Assn. v. Brown*, Tex. Civ. App., 16 S. W. 2nd 834; *Richards v. Metropolitan Life Ins. Co.*, 184 Wash. 595, 55 P. 2nd 1067; *Triplett v. Equitable Life Assur. Soc.*, 117 W. Va. 537, 186 S. E. 124. Many of these cases are stated in 40 *A. L. R.* 1386; *Bahneman v. Prudential Ins. Co.*, 193 Minn. 26, 257 N. W. 514, 97 A. L. R. 121-132; 160 A. L. R. 626.

It is not necessary to undertake an analysis of these decisions and the differences in the policies whose construction was in controversy. Some are to be distinguished from the policies which were issued by the as-

surer to the plaintiff on this appeal, and others are in point. It will be sufficient to state that the basic reason upon which *Ginell v. Prudential Insurance Company*, 237 N. Y. 554, 143 N. E. 740, and the decisions of like effect, rely for a construction in conflict with the view here expressed, is that, if an assured has recovered at the time of action brought, to permit him to maintain an action on a policy which promises benefits in the event of "permanent disability" would mean that the parties contemplated that the word "permanent" was a synonym for "temporary". *Richards on Insurance* (4th ed.), sec. 416. In attaching decisive importance to the nature of the assured's physical and mental state at the time of the institution of the action, there is a disregard of the principle that the rights and liabilities of the parties to a contract arise when the contract is made, and are determined with reference to what those rights and liabilities are at the agreed time of performance and breach. Again, the decisions upon which the appellant relies apparently give no weight to the fact that a total disability which, at the time of its origin and throughout its duration, is, according to its quality, a condition which will naturally continue to last indefinitely, without substantial change, until, probably, the full term of the assured's life, is within a definition of permanent disability.

Its termination by any cause does not retrospectively transform from its beginning until its end what was a permanent disability into a temporary disability which had not theretofore had an existence. Unquestionably, if death bring a state of permanent disability to a close, a few months, or any other length of days, after the state arose, no one will deny, notwithstanding its brief existence, that a state of permanent disability has closed, and no one can maintain that the number of days from its start to its finish would determine whether or not the disability was a permanent or a temporary disability. So, it is not length of days, but the quality of indefinite, continuous, projection in future time, that is the determinative quality of a permanent disability. The point

is that if a person be temporarily or permanently disabled at any time, the nature of his prior disability would not be affected by his death. As in the event of death the permanent disability expires with the subject, so, on the cure or recovery of the subject, some essential attribute of permanent disability comes to an end. If the subject of the permanent disability do not die, but be cured of his disability or recover, the disability terminates, but, as in termination by death, the nature of the disability *before* the cure or recovery remains, with reference to that prior period, unchanged. It follows that neither cure nor recovery, any more than death, does more than end the existence of a permanent disability, which, until its expiration, remains, for the period of its existence, so far as the rights of the parties in interest are concerned, a permanent disability.

2. The agreement provides that the disability benefit provision shall not be effective if the disability of the insured shall result from self-inflicted injury or from any aerial or submarine casualty. The testimony is that, in distinction from acute alcoholism, chronic alcoholism is a disease which affects the physical, nervous and mental condition of the victim, and creates an uncontrolled craving, with the deprivation of the will power and moral strength to combat the craving.

There is no evidence on the record legally sufficient for the jury to find that the chronic alcoholism of the assured is the result of his conscious purpose or design. See *Globe Indemnity Co. v. Reinhart,* 152 Md. 439, 456-458, 137 A. 43. On the contrary, the testimony tends to show that he had vainly exercised his will to restrain and control his desire. The result of his disease is a weakness of will and of character which causes him to yield to the temptation of an overmastering appetite for intoxicating liquor. The drinking in the first stages was voluntary, but there is no testimony that the drinker was then aware of the latent danger in his habit, and so, while his consumption of alcoholic beverages was a voluntary act, yet his ignorance of its insidious effect does

not make the act a voluntary exposure of himself to the unapprehended and unexpected danger of the disease of chronic alcoholism. The *result* of the indulgence of an appetite does not necessarily determine that the result was self-inflicted, because, if the actor does not apprehend or is ignorant of the danger of his act, he may not be held to have voluntarily inflicted upon himself its consequences. Since the plaintiff here does not appear to have had conscious knowledge of the danger that his drinking might develop from a harmless indulgence into the baneful disease of chronic alcoholism, the disease may not be said to have been self-inflicted. If the evidence on this subject were such that reasonable men might differ upon whether or not the chronic alcoholism of the plaintiff was self-inflicted, the question of intent would have been an issue for the jury. In our judgment there was no ground to submit the question to the jury.

In *New York Life Ins. Co. v. Riggins,* 178 Okl. 36, 61 P. 2nd 543, it is said (page 552): "Thus in this case the insured's act in drinking intoxicating liquor was unquestionably intentional, that is, he intended to drink the liquor, but we think it is likewise a fair and reasonable inference from the evidence in this case that he did not in fact intend to bring about the condition known as chronic alcoholism resulting in partial brain destruction as detailed in the evidence now before us. We therefore conclude that the disability in this case was not self-inflicted within the exclusion clause contained in the policy."

3. The final question made is that it was error in the court to instruct the jury that, if it found for the plaintiff, he was entitled to recover income from April 11th, 1936, if the jury should find the disability began at that time, until such time as it should find from the evidence that the disability ceased. The jury found a verdict of $1,250, which was for five months. The claim was from April 11th, 1936, to November 20, 1936. The defendant contends that the income was not payable during

disability but only from the receipt on September 22nd of proof of total and permanent disability.

This court agrees with the trial judge in the construction of the policy on this point. The purpose of the policy was to provide the policy holder with a monthly income during the period of total and permanent disability. It was stated in two headings in capitals on the supplemental agreement that this was the effect of the agreement. If it had been the intention to lessen the period of protection, it should have been expressed in such a manner as clearly to nullify the effect of the form in which the agreement was cast by the assurer. The fact that the contract provided that the payment of the income would be upon the receipt of the formal proof by the assured of his required physical or mental incapacity, and its existence for a period of ninety days, did not affect the amount of the monthly income which had accrued due from the time of such disability, but referred to the time when the carrier would be in default and the assured would be entitled to enforce the payment. Unlike the terms of many policies, the language used does not diminish the period during which the income is promised by the time which elapses until the proof of the claim is delivered to the assurer. *National Life & Accident Ins. Co. v. King*, 102 Miss. 470, 59 So. 807.

The waiver of premiums is separately provided for, and, as no question is made as to these, no opinion is expressed in reference to the use of the word "thereafter" in the clause with which the paragraph closes, wherein the provision is made for the waiver.

In accordance with the views here expressed and because no reversible errors are found, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*